No. 35,259

NELLE J. McKEE, *Appellee* and *Cross-appellant,* v. JOHN G. McKEE, *Appellant.*

(118 P. 2d 544)

Opinion filed November 8, 1941.

*P. L. Courtright,* of Independence, for the appellant.

*Thomas E. Wagstaff* and *Jay W. Scovel,* both of Independence, for the appellee.

The opinion of the court was delivered by

Hoch, J.: By appeal and cross-appeal we are asked to determine what, if any, further payments for child support should be required from the appellant.

On June 22, 1920, Nelle J. McKee was granted a divorce from John G. McKee and the defendant ordered to pay $70 a month for the support and maintenance of a minor child, then one or two years of age. On September 2, 1920, this amount was reduced, under order of the court, to $60 a month. Under circumstances presently to be related, appellant reduced the payments to $50 a month, and beginning in February, 1921, appellee received and accepted such monthly payments of $50 for more than nineteen years.

On November 20, 1940, appellant filed an application for an order declaring the judgment satisfied. Submitted with the application was a written release signed on November 4, 1940, by the daughter, who had become of age on June 30, 1940, acknowledging payment in full so far as she was concerned and releasing both the father and the mother from any further claim as far as the judgment and orders of the court were concerned.

Answering the motion, appellee denied that there had ever been any modification of the order for monthly payments of $60 and asked judgment—computed on a basis of $10 a month deficiency beginning with February, 1921—for $2,340 and attorney's fees.

Replying, the appellant alleged in substance that the court had in effect authorized the reduction to $50 and that if the order had not been formally entered the record should be corrected to show such order. He further contended that if it be determined that no such order had actually been made, the appellee was barred from recovery by the statute of limitations, by laches and by the fact that the daughter had become of age, had executed a release and there was no further obligation to support her.

Trial was had and the court held that all claims for child support which had been due and unpaid for five years were barred by the statute of limitations, but that those within five years were not barred. Judgment, based on a monthly deficiency of $10 over the five-year period was entered for the plaintiff in the amount of $610.65 with interest. From this judgment appellant appeals on the ground that all claims were barred by laches of the plaintiff and by the fact that after she had become of age and before any proceedings were

begun to collect the amount claimed, the daughter had executed a release to both her father and mother. Appellee cross-appeals from the order overruling her motion for a new trial, her motion being grounded in alleged error of the court in holding any of the claim barred by the statute of limitations.

We first consider the cross-appeal. It is well settled that where alimony or child support is ordered paid in installments each installment when due is to be regarded as a judgment taking effect as of the date due (*Sharp v. Sharp*, 154 Kan. 175, 117 P. 2d 561; *Burnap v. Burnap*, 144 Kan. 568, 61 P. 2d 899), and that the statute of limitations (G. S. 1935, 60-306, ¶ 6) begins to run as of that date the same as any other judgment. (34 C. J. 1088, § 1534; 34 Am. Jur. 114, § 142; *Sharp v. Sharp*, supra.) The trial court was therefore correct in ruling that all monthly installments unpaid in the amount of $10 were barred after five years.

We now consider whether by her acts or conduct the appellee was precluded from recovery as to the five-year period.

The circumstances under which appellant reduced the monthly payments to $50 may be briefly noted. Appellant contends that his then attorney, T. J. Flannelly, since deceased, advised him that he had consulted the trial judge and that it would be all right to reduce the payments to fifty dollars; that he supposed that a court order to that effect had been made and that he continued to pay $50 a month under that belief. On this point there is some discrepancy or confusion in the record as to the time when this alleged conversation with the attorney took place, but we need not attempt to determine that question. The trial court commented on the matter and stated that he did recall a conversation with Mr. Flannelly concerning the matter. Following are extracts from the comments of the court:

"It has been a long while and I am not saying I remember the exact words he said, but he did speak to me about this matter and said sixty ($60) dollars was more than Mr. McKee could pay upon the salary he was getting. I am not sure, but it runs in my mind at that time that he mentioned the salary or reduction in salary and he says, 'I have recommended to Mr. McKee that he pay fifty ($50) dollars a month. If she files an application for citation, we would like to ,be heard before you issue the citation,' and as I recall it, I told Judge Flannelly he ought to know about what the defendant ought to pay and was able to pay because he knew what his salary was and had had experience on the bench, and I told him as I recall it, at that time that if he reduced the amount from sixty ($60) or fifty ($50) dollars a month, that before

I issued any citation upon the application of the plaintiff, I would give them a hearing. . . . As I got it from Judge Flannelly, if she raised any objection to the amount being reduced from sixty to fifty, they would make an application to get an order from the court to the effect that he should pay only fifty ($50) dollars a month. That is the way I remember it. I do remember and I do know no formal hearing was had where I was on the bench. . . .

"Mr. Wagstaff: You never, judge, called my attention to it as attorney?

"The Court: I don't think I did. I know you were not here at the time and Mrs. McKee was not here. Judge Flannelly and I were talking right back by that door, and I gave him to understand that if he reduced the payments from sixty to fifty, I wouldn't issue any citation order without [giving] Judge Flannelly an opportunity to come in and be heard upon the question of whether he should pay fifty or sixty."

While there is no present contention that any formal order was ever made reducing the payments to $50, it is undisputed that beginning in February, 1921, appellee accepted and cashed the monthly checks for $50. There is no record that she ever made any complaint about the reduction. In fact, she testified that she discussed the matter with her own attorney and decided to do nothing about it. Pertinent portions of her testimony were as follows:

"He just said he would pay fifty and no more, so I didn't do anything about it. I took it and let it go at that. I had had quite a bit of difficulty and I thought that was the easiest way to have it settled. We had had several difficulties about it." . . .

"I talked to Mr. Wagstaff and I said I was tired of having trouble, so let it go. That was all that was ever done. I didn't start any more trouble."

A fair construction of appellee's testimony is that she acquiesced—however unhappily— in the reduction to $50. That she did so is confirmed by the fact that every month for over nineteen years she took the $50, made no objection to appellant, and took no steps of any sort to enforce payment of $60. She waited until after the daughter was of age and no longer required or asked any support from either of her parents and had signed the written release.

While lapse of time alone will not ordinarily support a defense of laches, it has been held sufficient to make the doctrine applicable in cases where it would be clearly inequitable to permit the enforcement of bare legal rights (19 Am. Jur. 352, § 508), or where the delay in asserting rights has been wholly unreasonable (21 C. J. 220, § 218). However, we have here much more than mere lapse of time. We have acquiescence on the part of appellee—an important factor in determining whether there has been such laches as will bar recovery. (21 C. J. 224, 225, § 219; 10 R. C. L. 397, 398, § 144,

note 17.) We have the affirmative acts of appellee in accepting the monthly payments, without complaint, through the years. If appellant believed, as he asserts, that his action in reducing the payments was with the consent of the court, then her conduct let him rest in that belief. If we assume that he became aware that no formal court order had been entered, then it must be said that her acts and conduct lulled him into inaction in the matter of securing, if possible, such a court order. Can it fairly be said that appellee's actions did not result in disadvantage to the appellant as far as enforcement of the alleged deficiencies is concerned? We think not. In the first place, payment of the lump sum now demanded is quite a different thing from payment of $10 a month. Furthermore, in the light of all the circumstances, it is obvious that appellant's situation as it relates to possible modification of the order has been altered to his detriment by appellee's acquiescence and long silence. The doctrine of laches being equitable in character, all facts and surrounding circumstances are to be considered in determining its applicability. We think it would be clearly inequitable, under the instant facts, to permit any recovery by appellee.

On the subject of laches, counsel for appellee have called special attention to the case of *McGill v. McGill*, 101 Kan. 324, 166 Pac. 501. The question in that case was simply whether the defendant, plaintiff's former husband, should be required to appear and show cause why he should not be held in contempt for failure to pay alimony long unpaid. In the face of a "meager showing furnished by the record," and absence of evidence on matters considered material, it was held that the defendant should be required to show cause. The case presents no conflict with the instant conclusion.

The judgment in favor of the plaintiff, appellee, must be reversed with directions to enter judgment for defendant. It is so ordered. As to the cross-appeal, no new trial being required, the order overruling the motion for a new trial is affirmed.