No. 46,780

Thelma N. Clark, formerly Thelma N. Chipman, *Appellant,* v. Marion W. Chipman, *Appellee.*

(510 P. 2d 1257)

260

Opinion filed June 9, 1973.

*Charles S. Fisher, Jr.,* of Topeka, argued the cause and *Clayton S. Flood,* of Flood, Martin, Coffelt & Flood, of Hays, was on the brief for the appellant.

*Randall W. Weller,* of Jones and Weller, of Hill City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a divorce action by Thelma N. Clark (formerly Thelma N. Chipman) wherein she seeks recovery of money which she allegedly expended for the support of the parties' two children after the divorce was granted.

Telma was granted a divorce from Marion W. Chipman on July 15, 1965, in the district court of Graham County, Kansas. The parties are the parents of two children, Clark Chipman, age twenty at the time of the divorce, and Jill Chipman, age fifteen at the time of the divorce.

The parties entered into a "settlement agreement" which provided for a division of property, child custody and child support when

the divorce was granted. The "settlement agreement" was incorporated into the judgment of the trial court and made a part thereof. At the time of the original divorce action, Clark Chipman was a student at Ft. Hays Kansas State College. Since then Clark has graduated from that institution, and at the time judgment was entered denying the appellant's motion for past child support allegedly due and owing, Clark was a senior at the University of Kansas Medical School, and Jill was attending Ft. Hays Kansas State College.

Upon the filing of Thelma's motion seeking a judgment for back child support allegedly due and owing, the judge of the district court of Graham County disqualified himself for personal reasons and the case was referred to an assigned judge.

The assigned judge, after hearing the matter, issued a memorandum decision which was fully incorporated into his journal entry. The memorandum in pertinent part reads:

"The questions involved in this matter are the legal obligation of defendant to contribute to support of his children after majority and until they complete college, the extent of discharge of defendant's duty to support the children to this date, and the amount, if any, of recovery for money purportedly spent by plaintiff for support of the children of the parties.

"The parties signed a settlement agreement dated July 15, 1965. In addition to division of property, Paragraph No. V of said settlement agreement provides as follows:

'V. As an integral part of this settlement it is agreed that Thelma N. Chipman shall provide the initial sum of $200.00 per month for the support of the minor children of the parties. It is further contemplated and agreed that Marion W. Chipman shall provide such further support for his children, regardless of their age, as may be necessary for their care, support and education, including college and professional school education.'

"The court in its Journal Entry filed July 15, 1965, found the agreement to be fair, just and equitable and approved the settlement, and it was made a part of the judgment of the court as though set out in full.

"The plaintiff alleges since the divorce she has expended the sum of $23,270.40 over and above the agreed support money payment of $200.00 per month for the care, support and maintenance of the children of the parties. Plaintiff asks judgment for this amount with interest at the rate of 8% per annum.

"The defendant, since the decree of divorce, alleges he has paid for the support, care and maintenance of Jill Ellen Chipman the sum of $6,674.47, and for Clark D. Chipman the sum of $9,402.05.

"Therefore, according to the testimony of the parties, the amount of approximately $55,746.92 has been spent upon the children of the parties since the divorce.

"It is not clear to the court as to whom the defendant made his payments, but the inference is the money was sent directly to the children and used for their welfare.

"*It should be noted the court specifically finds and orders in its decision of July 15, 1965, support payments have been arranged for the children of the parties, and the arrangements were approved by the court, subject, however, to the continuing jurisdiction of the court. It should be further noted that specific order for a specific amount of child support is not contained in the court's final decree.*

"The defendant, who is a competent, qualified attorney, with advice of his attorney, voluntarily signed the agreement of settlement and approved the journal entry filed in the divorce action. Until this matter arose upon the motion, defendant acquiesced in the judgment and contributed to the support of his children, presumably under the judgment of the court. (Feldmann v. Feldmann, 166 Kan. 699 at page 703)

"The defendant correctly states the law in regard to the obligation of a parent for support of his adult children. That authority, however, is not pertinent to the case at Bar. There is a distinct difference between what the court has authority to do under the law and what the parties agree upon. (*Feldmann v. Feldmann, 166 Kan. 699 at page 705*)

"The court finds, pursuant to the settlement which was incorporated into the judgment, defendant has the obligation to support the children of the parties as may be necessary for education, including college and professional school education. The evidence discloses Clark D. Chipman will graduate from medical school within a short time. Upon graduation he intends to enter an internship or a residency for a specialty. In either event the need for support for Clark D. Chipman would expire upon his graduation from medical school, since either internship or residency is self-supporting.

"The obligation of defendant under the property settlement and judgment will extend to Jill Ellen Chipman until such time as she graduates or should graduate from college.

"The fact defendant is obligated as above set out does not mean plaintiff is entitled to recover from the defendant for moneys previously expended by her. *It will be noted no formal demand was made upon defendant for the support or care of these children under the agreement or outside the agreement and judgment,* except in a few isolated instances and for relatively small amounts. Such demands were promptly met by defendant. Without specifying specific expenditures by plaintiff, a vast majority of such expenditures were not for necessities. Also, in some instances the amounts attempted to be collected from defendant were for durable goods which will be or could be later used by the plaintiff.

"The court finds that approximately the sum of $19,331.64 was expended by the plaintiff for items that were not necessary for the care, support, maintenance and education of the children.

"The court further finds that approximately the sum of $3,994.76, in addition to the monthly support payments of $200.00, was actually needed for necessities. During this time, defendant contributed to the children approximately the sum of $16,076.62, which is roughly four times the amount actually needed for care, support and maintenance of the children, not considering payments of $200.00 per month paid by plaintiff. (Hayn v. Hayn, 162 Kan. 189)

"A typical family relationship will result in spending some money for

children for non-essentials. Parents cannot be criticized for such spending. Normal parents, of course, wish to furnish all advantages possible to their children. However, money expended for items and things over and above that necessary to discharge a parent's legal obligation to his children would be classed as voluntary expenditures.

"The court finds the support award, agreed upon by the parties, and the additional money furnished by defendant was sufficient to discharge the legal obligation of the parties. Money spent by plaintiff over and above this amount was voluntarily expended, and no recovery may be had.

"Plaintiff began keeping an itemized account of money she spent on the children two days after the divorce was granted. This account was continued on a daily, semi-weekly or weekly basis until shortly before this action was filed. It is clear plaintiff intended to seek recovery from defendant for these expenditures. However, no formal demand therefor was made upon defendant until plaintiff's attorney made the demand a short time before her motion was filed on October 19, 1971. In addition, *plaintiff made no attempt to seek relief through court for this period of time, although the court has continuing jurisdiction over such matters. Proper procedure would require plaintiff, if she believed herself entitled to relief, to institute action in court and request specific orders, including specific amounts of child support to be paid by defendant. Failure to do so is laches.*

"With no knowledge of these demands, defendant could not make economic plans to meet such payments, had he been disposed to do so. This is particularly true in view of defendant's economic situation at the present time. The evidence discloses defendant to be in debt in the amount of approximately $66,159.00. Further, this course of action by plaintiff denied defendant any semblance of parental discretion to decide what was necessary and what was not necessary for the support of his children.

"Therefore, the court will not at this time make orders for specific amounts of support to be paid by defendant but will rely upon defendant's sense of obligation and justice to fulfill his obligation under the original agreement as herein defined. However, in the event payments for necessities are not made as ordered, the court retains jurisdiction to make future orders as circumstances require." (Emphasis added.)

Of the various defenses asserted by the appellee the trial court upheld three of these defenses. First, the trial court found that the sum of $19,331.64, of the appellant's claim was not expended for necessities for the care, support, maintenance and education of the children, leaving the sum of $3,994.76, expended by the appellant for necessities over and above the $200 per month the appellant was required to provide. The trial court also found the appellee had expended the sum of $16,076.62 which was more than he was required to provide under the agreement.

Second, the trial court concluded that any and all money expended by the appellant over and above the $200 per month, was voluntarily expended and that no recovery may be had.

Third, the trial court held the appellant was guilty of laches because she planned to assert this claim since the date of the divorce on July 15, 1965, but did not do such until October 19, 1971.

Nowhere in the appellant's statement of points does it appear that she is challenging the trial court's conclusion that:

". . . [T]he support award, agreed upon by the parties, and the additional money furnished by the defendant was sufficient to discharge the legal obligation of the parties. Money spent by plaintiff over and above this amount was voluntarily expended, and no recovery may be had."

Under Rule No. 6 (*d*) of the Supreme Court rules no issue, other than an issue going to the jurisdiction of the court over the subject matter of the litigation, may be briefed or will be considered on the appeal unless included in the statement of points. (See *Crowther, Administrator v. Baird,* 195 Kan. 134, 402 P. 2d 753; and *Greenwood v. Blackjack Cattle Co.,* 204 Kan. 625, 464 P. 2d 281.)

A voluntary payment is defined in 70 C. J. S. Payment § 134, as follows:

"A voluntary payment, within the meaning of the rule that such a payment cannot be recovered, means a payment made by a person of his own motion without compulsion, a payment made without a mistake of fact or fraud, duress, coercion, or extortion, on a demand which is not enforceable against the payor; and whether in a given case a payment is voluntary depends on the facts of the particular case, as indicating an intention on the part of the payor to waive his legal rights."

Where payments are voluntary it is immaterial whether such expenditures were made for necessities or not.

On the record presented the appellant is bound by the trial court's holding that all money expended by her over and above the $200, was voluntarily expended and that no recovery may be had.

The claim of the appellant herein is for the sum of $23,270.40. In addition to this amount, she claims to have spent $200 per month, which for a period of six years amounts to $14,400. In addition thereto the appellee has expended $16,076.52. Thus, for a period of approximately six years, the total sum of $53,746.92, has either been paid to the children of this marriage or has been expended on their behalf. The above figures do not take into account any monies expended from self earnings by the children,

if any, college loans or grants, if any, or any cash given them by either of the parties of which no records were kept.

The trial court was undoubtedly impressed with this total expenditure and carefully scrutinized the itemization of the appellant's accounting as disclosed by the various exhibits introduced in evidence, which cover 35 pages in the record. The appellant described the items in the exhibits as funds supplied "for the support of both children as shown in her exhibits," and that this money was spent for "maintenance, food, tuition, books, clothing, all of the many things it takes to raise children." She further testified:

"That the records shown in said Exhibits were kept by Plaintiff, personally, and entries made in Plaintiff's record from time to time as such amounts were spent; that when both children were with her, she split some expenses three ways and when only one of the children was living with her, she split certain expenses such as rent, groceries and other household expenses two ways; that such expenses were necessary; that before the parties were divorced, the Defendant enjoyed a good income and that the family lived comfortably, that Clark was given a car when he went to school, before the divorce, and that Jill had a car for her own use when she was in high school."

Each child had an automobile at school and many items were for automobile expenses. Some of these items are: "Car insurance, 6 mo."; "Money Chevrolet"; "Difference in car trade"; "Car title and reg."; "Car repair"; "Car Tax"; "Volks repair"; "Gasoline"; "Car insurance (Mustang to Jan. 69)"; etc.

The accounting includes various items such as plane fare, gifts, apartment rent in the State of California, Colorado trip, show, flowers, dog basket and food, items of furniture, pound fee, kennel for dog, bridge tolls, church donation, and cash.

The appellant sold the home in Hill City, Kansas, awarded to her with furnishings in the divorce action, and gave much of the furniture away when she moved to the State of California about six months after the divorce was granted. Apartment rent in California is itemized in the accounting.

On the record presented the appellant has not made it appear the trial court erred in finding that approximately the sum of $3,994.76 in addition to the monthly support payments of $200, was actually needed for necessities to support the two children. The trial court also found the appellee contributed to the children approximately the sum of $16,076.62, which was roughly four times the amount actually needed for care, support and maintenance

of the children, not considering the $200 per month paid by the appellant.

We view the factual findings made by the trial court as binding upon the appellant, inasmuch as she has failed to present a record showing that the trial court erred in making findings of fact.

The appellant claims the trial court's refusal to enforce the contract and decree is based solely on laches for failure of the appellant to make a demand upon the appellee. This, the appellant contends, is contrary to the evidence.

In the case at bar, the evidence is in sharp conflict between the appellant and the appellee, as to whether or not any demands had been made by her on him prior to this action. The appellant testified that she made demands upon the appellee on the telephone, while the appellee testified that she had never made any type of demands upon him, except pertaining to some car insurance, which he promptly refunded to her. The trial court upon this conflicting evidence found that no demands were made, except for the insurance heretofore stated.

We are not disposed to labor the many decisions cited by the parties herein which pertain to the authority of the trial court in a divorce action *under the statutory law* to require the husband to provide support, maintenance and education *for his minor children.* Here we are confronted with a marriage settlement agreement.

It has been held in a divorce that a husband and wife may enter into a marriage settlement agreement. In *Feldmann v. Feldmann,* 166 Kan. 699, 705, 204 P. 2d 742, it was said:

". . . [A] husband and wife may enter into a marriage settlement whereby they agree upon a division of property as between themselves and payments to be made by the husband to the wife for the care and support of their children, including maintenance of the wife as well while such children are in her care and custody, and that such an agreement, where it has been freely and fairly made, may be made a part of the judgment in a divorce action and that the judgment thereby entered as to payments to be so made to the wife is valid even though the sum total of such payments is neither itemized as to purpose nor definitely fixed as to amount. . . ."

When the terms of the contract here involved, particularly paragraph V pertaining to the support and education of the children, are analyzed they must be interpreted in accordance with the language employed by the parties. In this respect the trial court properly construed the obligation of the parties with respect to the provisions for support of the children. The appellee's obligation to support his children under the agreement did not cease

when the children attained the age of majority. Under the agreement the appellee was required to provide such further support for his children, over and above the initial sum of $200 per month which the appellant was required to pay, "regardless of their age, as may be necessary for their care, support and education, including college and professional school education." The obligation of the appellant, contrary to her contention, to provide the initial sum of $200 per month for the children's support did not terminate when the children attained the age of majority while they continued with their education.

In *Allison v. Allison,* 188 Kan. 593, 363 P. 2d 795, this court recognized the broad discretionary powers in the trial court to make provision for the education of the *minor* children including college education. There the court held:

"In a divorce action, where the welfare of minor children is involved, the trial court's power in dealing with the property of parents is necessarily very broad, and unless that power is obviously abused, its exercise will not be disturbed on appeal. Thus, an order requiring the father of a minor child to establish a trust fund to provide for the college education of the child, as more particularly set forth in the opinion, is construed and held to be properly within the discretion of the trial court." (Syl. ¶ 4.)

We hasten to add that *Allison* must be distinguished. There the court was confronted with the application of G. S. 1959 Supp. 60-1510, which authorized the making of provision for the children of the marriage only during their *minority.* Here, however, we are not concerned with statutory provisions, but with the enforcement of the terms of a *contract* entered into freely and voluntarily by the parties to a divorce action, where the contract was approved by the trial court when the divorce was granted and made a part of the divorce decree. Under these circumstances the provisions of the contract are enforceable as a part of the judgment.

The appellant contends the doctrine of laches cannot be invoked in support cases and cites *Peters v. Weber,* 175 Kan. 838, 267 P. 2d 481 and *Effland v. Effland,* 171 Kan. 657, 237 P. 2d 380. In *Peters* the trial court barred the plaintiff wife from enforcing her ex-husband's liability for delinquent support payments on the theory of laches. There the delinquent husband was ordered to pay $20 per month for a child's support during its minority. After twelve years the wife brought an action in the form of a contempt proceeding to enforce the husband's obligation to support. On appeal this court held the husband's liability for past due payments was not barred by laches and the wife on behalf of the child could

enforce the husband's liability. When the action was instituted for delinquent support payments by the wife the child was still a minor, and enforcement of the past due payments would accrue directly to his benefit. In the opinion the court said:

"As found by the trial court, and as conceded by both parties, installments decreed in a divorce action for the support of a minor child become final judgments as of the dates due, may be collected as other judgments, and are barred by the statute of limitations (G. S. 1949, 60-306, *Sixth*) the same as other judgments. . . ." (p. 843.)

Similarily in *Effland* the husband was said to be under a parental duty to provide for the support and education of his minor child from the date of the divorce decree, and that he was not relieved of that duty because of the wife's delay in asking the court for an order requiring him to do so. Here again the court was dealing with the minor child of a marriage. And the obligation to support could be enforced by an action at any time during the minority of the child.

The doctrine of laches was applied in a proceeding to recover payments of support past due in *McKee v. McKee*, 154 Kan. 340, 118 P. 2d 544. There the father was ordered in the divorce decree to pay $60 per month for the support and maintenance during the minority of a child then one or two years of age. Soon thereafter the payments were reduced by the father to $50 per month, and were accepted in that amount by the former wife every month for more than nineteen years, and until after the child has become of age and no longer required or asked support from either parent. On appeal it was held the former wife was barred, by her laches, from recovering any of the alleged deficiencies in the monthly payments by reason of her acquiescence in the reduction to $50, and by her acts and conduct viewed in the light of all of the facts and circumstances set forth in the opinion. (The *McKee* case was distinguished in *Peters v. Weber,* supra.)

In the instant case the trial court specifically noted the provisions of the agreement herein did not require the appellant to pay a specific amount of child support. The trial court further noted that the court's final decree approving the agreement contained no specific order for a specific amount of child support.

Laches is an equitable device to bar bare legal claims in certain instances.

In *Degenhardt, Administrator, v. Degenhardt,* 183 Kan. 260, 267, 326 P. 2d 288, this court said:

". . . Courts of equity will regard long passage of time in asserting claims with disfavor apart from any particular statute of limitations. The doctrine of laches is designed to bar stale claims. The plaintiff agrues that mere passage of time is not enough to invoke the doctrine. It may be readily assumed that defendant has paid taxes on the real estate, has made repairs and done many other things during all of the years in which plaintiff and the other heirs of Margaret Degenhardt, deceased, have been content to sleep on their alleged rights. Nowhere in the amended petition do we find even an attempted excuse for the delay of thirteen years between the death of the mother and the beginning of this lawsuit."

It has also been said laches in legal significance, is not mere delay, but delay that works a disadvantage to another. (*Utilities Co. v. Bowersock*, 109 Kan. 718, 202 Pac. 92.) In the more recent case of *Darby v. Keeran*, 211 Kan. 133, 505 P. 2d 710, the court said:

"We do not consider the delay in filing suit as being inordinate in and of itself. Lapse of time is necessarily a relative matter in which all surrounding circumstances must be taken into account. As the court said in *Golden v. Claudel*, 85 Kan. 465, 471, 118 Pac. 77, each case must be governed by its own facts and what might be considered a lapse of sufficient time to defeat an action in one case might be insufficient in another." (p. 140.)

On the 19th day of October, 1971, when the appellant filed her motion in this case both children, Jill and Clark Chipman, were of age.

No part of the agreement pertaining to the appellee required him to make monthly payments. Under the agreement, there was nothing due from the appellee on a periodic basis, and therefore, a delinquency, if any, did not ripen into a "final judgment" against the appellee. Under these circumstances the law pertaining to dormant judgments, as set forth by the appellant in the various cases she cites, has no application.

The appellant's demand herein goes back to the month of July, 1965, when the divorce decree was granted. Until the appellant's motion on October 19, 1971, was filed she made no attempt to seek relief through the court for this period of time, although the court had continuing jurisdiction over such matters. The appellant had the right to come back into court and ask to have the decree modified, which she failed to do. She could have requested specific orders, including specific amounts of child support to be paid by the apellee. Under the circumstances we think the trial court properly concluded the appellant's failure to act constitutes laches and bars any recovery.

The appellant contends the trial court erred in permitting the appellee, over objection, to testify and show the property the

appellant had received in the settlement agreement, and the income she had received. The appellant further contends the trial court erred in overruling her objections to the appellee's evidence, when the court permitted the appellee to explain the "settlement agreement."

The appellee was requested by his counsel to tell the court what led up to the provision in the "settlement agreement", whereby his wife was to provide $200 per month for the support of the children and he was to provide sums over and above that for necessities including educational expenses. Over objection the appellee was permitted to answer that at the time of the divorce he was the owner of an undivided one-half interest in real estate which housed the office in which Kenneth Clark, his brother-in-law, and he conducted their law practice. The appellee stated that in the negotiations with Mr. Clark, who represented the appellant, it was agreed that Mr. Clark, the appellant's brother, should pay to the appellant $200 a month rent for the undivided one-half interest in the law library, the furniture and office building which was conveyed to the appellant by the appellee. By the terms of the property settlement the appellant was also to receive all income from the terminated law partnership of Clark, Chipman and Clark, except $3,000 which was to be received by the appellee. The appellee testified that his income tax return for 1965 showed the appellant had been assigned property worth $80,353.40; and that the provision in the "settlement agreement" whereby the appellant was to receive all income from the terminated law partnership other than $3,000, provided the appellant with income in the sum of $18,757.70 in 1966; with income in the sum of $1,550.46 in 1967; income of $4,060.56 in 1968; income of $507 in 1969 and income of approximately $40 in 1970.

The trial court, over objection, also permitted the appellee to further explain the "settlement agreement". The appellee testified the intent of the whole agreement was to give the appellant the bulk of the property in order to relieve the appellee of as much responsibility as possible, because the appellant and her brother, Kenneth Clark, believed it would be extremely embarrassing in a small community the size of Hill City for the appellee to continue to live there, when the appellant and the children lived there; and that both the appellant and her brother insisted that the appellee sign a document stating he would not practice law in

Graham County for five years. The appellee further pointed out that this meant he would be without any means of support or income, and that it would be necessary for him to move away and begin a new law practice just as a student recently graduated from law school. When asked if the intent of the "settlement agreement" was that the appellant was to obtain the bulk of the property chiefly for herself and the support of the children the appellee replied, "yes".

On cross-examination, the appellant testified she had received the parties' home in Hill City as part of the "settlement agreement" as well as all the furniture contained therein. Over objection, the appellant testified she sold the home in Hill City for approximately $16,000 and moved to California, where she paid apartment rent, and that part of such apartment rent was charged to child support on her lengthy list of expenditures filed as an exhibit in this action.

The paragraph pertaining to child custody and support in the "settlement agreement" between the parties cannot be interpreted in isolation apart from the agreement itself. Therefore evidence relating the terms of the agreement was admissible to show the intention of the parties as construed from the four corners of the instrument. (Failure to produce the written agreement is not a basis for objection in the record.)

It should also be noted extrinsic evidence attempting to show the real intention of the parties under the facts and circumstances must be distinguished from evidence admitted to show the "surrounding facts and circumstances" at the time the agreement was executed. Such evidence which tends to show the situation of the parties at the time the agreement was executed, the nature of the business, the extent of their property, and facts relating to the family itself may all be received in evidence if it assists in clarifying language used in the instrument, but not to change it. (*Schauf v. Thomas,* 209 Kan. 592, 498 P. 2d 256; *In re Estate of Sowder,* 185 Kan. 74, 340 P. 2d 907 and others.)

The testimony permitted by the trial court in this case did not import an intent wholly unexpressed when the agreement was executed. (See, *Drummond v. Drummond,* 209 Kan. 86, 495 P. 2d 994 and *In re Estate of Hill,* 162 Kan. 385, 176 P. 2d 515.) Accordingly, the trial court did not err in admitting the foregoing

testimony in evidence. There was never an attack by the appellee in his testimony to alter or change the terms of the settlement agreement. The testimony of the appellee was also admissible to show his financial condition.

The appellant challenges the ruling of the trial court which limits the support of Jill Ellen Chipman until she "graduates from college or should have graduated from college". It is argued this is an attempt by the trial court to rewrite the agreement of the parties.

Nowhere in the record is there any testimony or evidence indicating that Jill intended to go to school beyond the first college degree. The trial judge determined this matter on the evidence presented and we cannot say he erred.

The appellant contends the trial court erred in failing to rule that the children of the parties herein are beneficiaries of the agreement providing for their support, and in failing to render judgment in favor of Clark Chipman for sums borrowed by him for his own support.

Clark testified "that he has not lived extravagantly; that he has borrowed approximately $11,500 for school purposes" and, "that Defendant knew he was borrowing money to go to school and has not offered to reimburse him". It is argued none of this testimony is controverted and the settlement agreement plainly shows that it was for the benefit of the children of the parties.

It must be noted this is not an action in which Clark Chipman is a party. The proceeding is being conducted on the motion of the appellant in the divorce action for "payments for and on behalf of the children of the parties" for "their support, maintenance and education". In her motion she alleges the provisions of paragraph "V" of the settlement agreement.

The trial court ruled that the children were not third party beneficiaries.

The appellant has raised this point by argument only, and has not seen fit to brief the subject. It may be observed the appellant asserts in argument what she construes to be a third party beneficiary contract, whereas the settlement agreement herein *was made a part of the judgment for support and education of the children in the divorce action and was merged into the judgment.* Could Clark Chipman, as an alleged third party beneficiary, sue his father for recovery under these circumstances?

On the record presented, and in the absence of briefing by the appellant, we decline to pursue the point. (But see, *Forman v. Forman*, 17 N. Y. 2d 274, 270 N. Y. S. 2d 586, 217 N. E. 2d 645, 34 A. L. R. 3rd 1351.)

Other points asserted by the appellant are of insufficient merit to warrant further discussion.

The judgment of the lower court is affirmed.

FROMME, J., not participating.