(921 P.2d 839)

No. 73,754

In the Matter of the Marriage of MARY A. JONES, *Appellant/Cross-Appellee,* and WILLIAM J. JONES, *Appellee/Cross-Appellant.*

Opinion filed August 9, 1996.

*Dennis J. Molamphy,* of Wichita, for the appellant/cross-appellee.

*John Dee Roper,* of Wichita, for the appellee/cross-appellant.

Before PIERRON, P.J., MARQUARDT, J., and JAMES J. SMITH, District Judge, assigned.

SMITH, J.: Mary A. Jones and William J. Jones were divorced on June 8, 1982. Two children, April and Sandra, were born of the marriage. The decree of divorce incorporated a property settlement agreement dated May 26, 1982. The agreement originally set William's child support obligation at $1,200 per month. That

amount was stricken, and the sum of $1,800 per month was inserted and initialed by both parties. William has paid $1,200 per month from the beginning. At a 1987 hearing concerning health insurance, no claim for back child support payments was raised by Mary.

On May 10, 1994, Mary filed a motion for revivor to collect the deficiency in support payments from William. At the time Mary filed this motion, April was 19 years old and Sandra was 16 years old.

William filed a motion to terminate alimony and a motion to set aside the alimony judgment.

At the hearing on the motions, Mary testified the reason for the modification in child support amount was that she needed to qualify for a loan. William testified he did not remember any modification and had paid $1,200 per month from the beginning, as this was his understanding of the agreement. Mary testified that she knew William owed $1,800 per month, but she had not raised the deficiency issue since 1982 because she thought she might lose her alimony.

At the hearing on the motion for revivor in 1994, the court ruled that Mary was guilty of laches and that it would be inequitable and inappropriate for her to recover back payments dating back to June 25, 1982. It also denied William's motions to terminate alimony.

Both Mary and William appeal from the trial the court's rulings.

Mary claims that the dormancy and revivor statutes found in K.S.A. 60-2403 and K.S.A. 60-2404 supersede the equitable doctrine of laches. She also argues that because their daughter Sandra is still a minor, the doctrine of laches cannot apply to her.

"Interpretation of a statute is a question of law. An appellate court's review of a question of law is unlimited." *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

"The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any

general statute of this state, but all such statutes shall be liberally construed to promote their object." K.S.A. 77-109.

K.S.A. 60-2403(a) states that a judgment becomes dormant 5 years after the date of entry of a judgment. When a judgment remains dormant for years, it may be extinguished. However, there are exceptions to this rule in K.S.A. 60-2403(b):

"(1) If a judgment for the support of a child becomes dormant before the child's emancipation, it shall be the duty of the clerk of the court to release the judgment of record when requested to do so only if the judgment has remained dormant for the period prior to the child's emancipation plus two years. When, after the child's emancipation, a judgment for the support of a child becomes and remains dormant for a period of two years, it shall be the duty of the clerk of the court to release the judgment of record when requested to do so.

"(2) The provisions of this subsection shall apply only to those judgments which have not become void as of July 1, 1988."

Prior to July 1, 1988, a judgment was considered dormant 5 years from the date of the judgment, and after remaining dormant for 2 years, the clerk of the court could release the judgment. See K.S.A. 1987 Supp. 60-2403; K.S.A. 1985 Supp. 60-2403; K.S.A. 1984 Supp. 60-2403. Thus, prior to 1988, all judgments that were more than 7 years old would have been void. In the instant case, none of the judgments would be void because the payments were to begin on June 25, 1982; thus, 7 years had not elapsed on any of the support judgments. Therefore, the 1988 amendment to K.S.A. 60-2403 would apply to the support judgments in the present case.

K.S.A. 60-2404 states in pertinent part:

"If the motion for revivor was filed within two years after the date on which the judgment became dormant or, *in the case of a child support judgment, was filed during the period prior to the child's emancipation, within two years after the child's emancipation or within two years after the judgment became dormant,* whichever is later, on the hearing thereof the court shall enter an order of revivor *unless good cause to the contrary be shown,* and thereupon the execution shall issue forthwith. *On the hearing of a motion to revive a child support judgment, the court may enter an order to prevent the unjust enrichment of any party or to ensure that payments will be disbursed to the real party in interest.*" (Emphasis added.)

"The doctrine of laches is an equitable principle designed to bar stale claims. When a party neglects to assert a right or claim for an unreasonable and unex-plained length of time and the lapse of time and other circumstances cause prej-

udice to the adverse party, relief is denied on the grounds of laches. The mere passage of time is not enough to invoke the doctrine. For laches to apply, the court must consider the circumstances surrounding the delay and any disadvantage to the other party caused by that delay." *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, Syl. ¶ 9, 840 P.2d 1107 (1992).

K.S.A. 60-2404 specifically states that, "the court shall enter an order of revivor unless good cause to the contrary be shown." The statute does not specifically define what is meant by "good cause." We find that equitable principles such as laches guide the court in its determination of what good cause entails. Thus, we find the legislature did not abrogate equitable remedies in enacting the dormancy and revivor statutes.

During the revivor hearing, the 1994 court noted that Mary had listed her child support income as $1,200 rather than $1,800 on certain documents. Mary also testified that on certain occasions she was paid child support directly by William and then she would receive an additional check from the court; on the occasions when double checks were issued, she discarded one of the checks instead of cashing them both. Further, at a 1987 hearing concerning health insurance, Mary made no claim for back child support payments. It is evident from the trial court's findings that Mary neglected the enforcement of any claim for the additional $600 for a period of almost 12 years.

In its findings of fact in the journal entry, the 1994 court found:

"At no time did Petitioner and Respondent intend that Respondent would pay Petitioner $1,800 per month. The true intention of the parties at all times was that Petitioner was to receive $1,200 per month. The evidence is clear that Petitioner never did request more than $1,200 per month child support and that Respondent was reasonably prompt and did make all child support payments at the rate of $1,200 per month starting June 25, 1982."

The 1994 court found, in its conclusions of law:

"As a matter of law . . . Petitioner is guilty of laches and . . . it would be wholly inequitable and inappropriate for Petitioner to be able to now go back all the way to June 25, 1982, and seek to recover $600 per month, which represents the difference between the original number inserted in the Agreement and the number placed in the final Decree."

During trial, the 1994 court stated;

"I think it is clear that it would be terribly inequitable to now go back and enforce something, I don't even know how much this would come to, hundreds of thousands of dollars, imagine with interest but 70 or $90,000, $600 a month when both of these parties they have been constantly in contact with each other. The support payments have been made every single month."

The specific circumstances of this case warrant the doctrine of laches being used even though the statute of limitations has not run, as the 1994 court found "good cause" to not issue the order of revivor.

There is case law in Kansas that supports the use of laches in child support cases. In *McKee v. McKee*, 154 Kan. 340, 341, 118 P.2d 544 (1941), the child support was initially set at $70 per month in 1920. Later, in 1920, it was reduced to $60 per month by an order of the court. In 1921, the father began paying $50 per month under the assumption that a court order had been made reducing his payments. The mother accepted such payments for the next 19 years. She took no steps to enforce the payment of the $60 per month obligation. The child was no longer a minor at the time the mother was attempting to collect the deficiency, and, moreover, the child had executed a release of both parents. The court held:

"While lapse of time alone will not ordinarily support a defense of laches, it has been held sufficient to make the doctrine applicable in cases where it would be clearly inequitable to permit the enforcement of bare legal rights [citation omitted], or where the delay in asserting rights has been wholly unreasonable. [Citation omitted.] However, we have here much more than mere lapse of time. We have acquiescence on the part of appellee—an important factor in determining whether there has been such laches as will bar recovery. [Citations omitted.] We have the affirmative acts of appellee accepting the monthly payments, without complaint, through the years." *McKee*, 154 Kan. at 343-44.

In *Clark v. Chipman*, 212 Kan. 259, 263, 510 P.2d 1257 (1973), the Kansas Supreme Court found that laches applied where the mother made no attempt to recover amounts she claimed were due under the settlement agreement for child support for approximately 6 years. We note that both children were over 18 at the time the mother attempted to recover.

In *Strecker v. Wilkinson*, 220 Kan. 292, 293, 552 P.2d 979 (1976), the father stopped paying child support after being advised by the district court in a letter that an order terminating child

support had been entered. Seven years later, the mother filed a motion in the district court for contempt for the father's failure to pay child support. The court found that because the mother had not received notice of the modification, the court had acted without jurisdiction in changing the amount of child support. *Strecker*, 220 Kan. at 297.

In *Strecker*, the court discussed *McKee* and *Clark* and stated that laches could be considered in cases dealing with a child who has reached the age of majority. It then stated:

"Support of children, like their custody, is a matter of social concern. It is an obligation the father owes the state as well as his children. [Citation omitted.] The parental duty to provide for the support and maintenance of a child continues through the child's minority, and the obligation to support may be enforced by an action at any time during the child's minority. [Citation omitted.] We note in passing that statutes of limitation are considered 'remedial' rather than 'substantive' in that they bar only the remedy and not the right. [Citation omitted.]

"The doctrine of laches is an equitable device designed to bar stale claims [citation omitted], and its application depends on the special circumstances of each case." In *Peters v. Weber*, supra, we said:

'Under all of the circumstances of the case we are unwilling to hold that defendant is entitled to invoke the defense of laches as a bar to the enforcement of his moral and legal obligation to his minor child. The rights of the latter are not to be waived by the inaction and passive acquiescence on the part of the mother. We are of the opinion the court erred in ruling that defendant was not liable for the payments which became due within five years prior to the commencement of this proceeding.' [Citation omitted.]" *Strecker*, 220 Kan. at 298.

The *Strecker* court did not directly address the issue of whether laches could be used in the case of minor children and dealt with the circumstance of a father making no attempt to pay support. In the instant case, William promptly paid the amount that the 1994 court found William and Mary had intended to be the proper amount of child support, but not the amount ordered by the 1982 court. This case can be distinguished upon such grounds from the *Strecker* case. We find the question remains as to whether there is a failure in any moral and legal obligation of William to support his children.

The facts of this unusual case can best be summarized as Mary and William agreeing to commit a deception on a third party, the bank, and acquiring the unwitting help of the judge by securing an

order to aid in that deception. Thereafter, between themselves, they ignored the effect of that deception. Due to their participation in this deception, neither Mary nor William should be enriched because of their involvement in this deception. While harm does not appear to have occurred to the third party, both William and Mary have unclean hands.

"The rule is well recognized in our courts that '[e]quity will give whatever relief the facts warrant. The distinguishing feature of equity jurisdiction is that it possesses full power to apply settled rules to unusual conditions and to mold its decree so as to do equity between the parties.' *National Reserve Life Ins. Co. v. Hand,* 190 Kan. 180, Syl. ¶ 2, 373 P.2d 194 (1962).

" '[A]s a general rule, equity will administer such relief as the nature, rights, facts, and exigencies of the case demand at the close of the trial or at the time of the making of the decree.' " *Baker v. Tucker,* 227 Kan. 86, 91, 605 P.2d 114 (1980)." *Barnett v. Oliver,* 18 Kan. App. 2d 672, 680, 858 P.2d 1228, *rev. denied* 253 Kan. 856 (1993).

"The clean hands doctrine is based upon the maxim of equity that he who comes into equity must come with clean hands. The clean hands doctrine in substance provides that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct. It is difficult to formulate a general statement as to what will amount to unclean hands other than to state it is conduct which the court regards as inequitable. Like other doctrines of equity, the clean hands maxim is not a binding rule, but is to be applied in the sound discretion of the court. The clean hands doctrine has been recognized in many Kansas cases. (*Brooks v. Weik,* 114 Kan. 402, 219 Pac. 528; *Scott v. Southwest Grease & Oil Co.,* 167 Kan. 171, 205 P.2d 914; *Browning v. Lefevre,* 191 Kan. 397, 381 P.2d 524; *Seal v. Seal,* 212 Kan. 55, 510 P.2d 167; and *Anderson v. Anderson,* 214 Kan. 387, 520 P.2d 1239.) The application of the clean hands doctrine is subject to certain limitations. Conduct which will render a party's hands unclean so as to deny him access to a court of equity must be willful conduct which is fraudulent, illegal or unconscionable. (*Seal v. Seal,* supra.) Furthermore the objectionable misconduct must bear an immediate relation to the subject-matter of the suit and in some measure affect the equitable relations subsisting between the parties to the litigation and arising out of the transaction." *Green v. Higgins,* 217 Kan. 217, 220-21, 535 P.2d 446 (1975).

Mary cites other cases to support her argument that laches cannot be used in a child support case, but these cases can be distinguished on other grounds. In *Effland v. Effland,* 171 Kan. 657, 661, 237 P.2d 380 (1951), the court found that public policy favors providing support for minor children and, therefore, a parent can

request support at any time during the minority of the child. *Eff-land*, however, can be distinguished from the present case in that the mother made no appearance at the original trial. Further, the court did not set any child support in its order. The Kansas Supreme Court found that the father was not relieved of the duty of providing support for his minor child just because of the mother's delay in asking the court for an order requesting him to do so. *Effland*, 171 Kan. at 661. In the instant case, William was paying the sum of money the parties intended for child support to Mary, and at the time of the action, one child was no longer a minor.

In *Peters v. Weber*, 175 Kan. 838, 839, 267 P.2d 481 (1954), the plaintiff and defendant were granted a divorce in 1941. The decree provided that defendant was to pay $20 per month for child support. About a year after her divorce, plaintiff remarried, and during the years of her marriage defendant paid nothing towards the support of his child. Plaintiff at no time requested support. In 1953, plaintiff divorced again and filed a motion for an order determining the amount of delinquency from defendant. Defendant raised the defense of laches. The Kansas Supreme Court distinguished this case from *McKee* by stating:

> "In the *McKee* case we have the affirmative acts of the father in paying $50 per month, and acceptance by the mother for the benefit of the child, for more than nineteen years. Here we are confronted with the fact defendant father paid nothing toward his child's support following the 1941 divorce—a period of twelve years. The record shows that he had notice of the pendency of the action. In the McKee case the child had become of age, she no longer required or asked support from either parent, and had executed a written release to her father and mother releasing both of them from any further claim as far as the judgment for child support was concerned, all prior to the action of the mother seeking to recover the alleged deficiency. No such circumstances are present here. The child is still a minor, and enforcement of the past-due payments would accrue directly to his benefit." *Peters*, 175 Kan. at 843.

*Peters* can be distinguished from the instant case in that William was providing support for his daughters, the only issue was the amount. Nothing in the record indicates what amount, $1,800, $1,200, or any amount in between, is the obligation of William to his children.

K.S.A. 60-2404 states: "On the hearing of a motion to revive a child support judgment, the court may enter an order to prevent the unjust enrichment of any party or to ensure that payments will be disbursed to the real party in interest."

Because April had reached the age of majority at the time Mary brought her action, the revivor action brought by Mary cannot be applied to her. Kansas case law interpreting K.S.A. 60-1610(a)(1) states: "K.S.A. 60-1610(a)(1) provides for support and education of minor children, making no provision for application of the funds other than for such support. The statute thus contemplates the use of such funds for support rather than for the reimbursement of funds to the custodial parent for past deficiencies." *Dallas v. Dallas*, 236 Kan. 92, 95, 689 P.2d 1184 (1984). It would, therefore, contravene the purpose of the statute to allow Mary to now recover back payments of child support on behalf of her daughter April.

Thus, the 1994 court was within its discretion when it applied the doctrine of laches to the support of April. However, Sandra, a minor at the time of the filing of the motion and not guilty of any unclean hands, continues to be the beneficiary of the moral and legal obligation of William to support his child. The record does not indicate the 1994 court considered whether the $1,200 paid monthly by William satisfied that obligation. If it did not, that trial court should not have applied the equitable remedy to protect William, who also had unclean hands, and should have required him to pay the remaining $600 or such part thereof as is necessary for him to meet his obligation to support Sandra.

This case is therefore remanded to the trial court to determine the amount of back child support payments necessary to meet the moral and legal obligation of William to support Sandra, in excess of that already paid and limited by the amount previously ordered by the 1982 court, if any.

William argues that the agreement may be reformed to reflect the true intent of the parties.

"The equitable remedy of reformation of written instruments is the remedy afforded by courts of equity to the parties and the privies of parties to written instruments which import a legal obligation, to reform or rectify such instruments whenever they fail, through mistake or fraud, or a combination of fraud and mis-

take, to express the real agreement or intention of the parties." 66 Am. Jur. 2d, Reformation of Instruments § 1, p. 526.

Kansas has recognized the equitable remedy of reformation to reform written instruments. See *Conner v. Koch Oil Co.*, 245 Kan. 250, 253, 777 P.2d 821 (1989); *Schlatter v. Ibarra*, 218 Kan. 67, 70, 542 P.2d 710 (1975). In the instant case, the agreement was incorporated into the divorce decree. Reformation by its very definition is "[a] court-ordered correction of a written instrument to cause it to reflect the true intentions of the parties." Black's Law Dictionary 1281 (6th ed. 1990). Once the agreement was incorporated, it transformed into an order of the court. Thus, reformation of the agreement would not be an appropriate remedy.

Under K.S.A. 60-260(b), a court may relieve a party from a final judgment, order, or proceeding for mistake, inadvertence, surprise, excusable neglect, or fraud, misrepresentation, or other misconduct of an adverse party if a motion is made within a reasonable time and not more than 1 year after the judgment, order, or proceeding was entered. The trial court in the instant case found that William was barred by the statute of limitations in K.S.A. 60-260(b). The trial court could have found the order was void under K.S.A. 60-260(b)(4) because of the joint fraud of the parties upon the court and to protect the integrity of the court. It did not, and that decision was within the discretion of the trial court.

William, on cross-appeal, claims that he should not be barred from modifying or setting aside the alimony judgment in favor of Mary.

The agreement contained the following provision:

"The husband shall pay to wife through the Clerk of the District Court as and for alimony the sum of $400.00 per month, commencing June 25, 1982, and thereafter on the 25th day of each month, and the sum of $300.00 per quarter year, commencing on July 25, 1982, and thereafter on the 25th day of each third month. Said payments shall terminate upon the death or remarriage of the wife."

The court approved the agreement and incorporated it into the divorce decree. The agreement did not contain any language giving the trial court authority to modify it.

William asserts three arguments in support of his contention.

First, he argues the trial court was required to terminate spousal maintenance that extended more than 121 months beyond January 1, 1983. He claims that in 1982, K.S.A. 60-1610(b)(2) made it unlawful for a court to award maintenance for a period of time in excess of 121 months, effective January 1, 1983.

At the time the parties entered into the agreement, K.S.A. 1981 Supp. 60-1610(e) and (f) provided:

"(e) *Maintenance.* The decree may award to either party an allowance for future support denominated as alimony, in such amount as the court shall find to be fair, just and equitable under all of the circumstances. The decree may make the future payments conditional or terminable under circumstances prescribed therein. The allowance may be in a lump sum or in periodic payments or on a percentage of earnings or on any other basis. At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the alimony originally awarded that have not already become due, but no modification shall be made, without the consent of the party liable for the alimony, if it has the effect of increasing or accelerating the liability for the unpaid alimony beyond what was prescribed in the original decree.

"(f) *Separation agreement.* If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, it shall be incorporated in the decree; and the provisions thereof on all matters settled thereby shall be confirmed in the decree except that any provisions for the custody, support or education of the minor children shall be subject to the control of the court in accordance with all other provisions of this article. Matters, settled by such an agreement, other than matters pertaining to the custody, support or education of the minor children, shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent."

Pursuant to subsection (f), the parties could enter into a separation agreement, and such agreement was not subject to modification by the court unless the agreement so stated or the parties subsequently consented to it. In 1982 this statute was revised to say that a trial court could no longer award maintenance for more than 121 months. K.S.A. 1982 Supp. 60-1610(b)(2) (corresponding to subsection [e]). However, K.S.A. 1982 Supp. 60-1610(b)(3) (corresponding to [f]) provided as follows:

"If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, the agreement shall be incorporated in the decree. . . . Matters settled by an agreement incorporated in the decree, other

than matters pertaining to the custody, support or education of minor children, shall not be subject to subsequent modification by the court except: (A) As prescribed by the agreement or (B) as subsequently consented to by the parties."

The statute went into effect on January 1, 1983. K.S.A. 1982 Supp. 60-1610. It is obvious from the plain language of the statute that even after the 1982 amendment, parties could still enter into separation agreements on their own terms, and as long as such terms were valid, just, and equitable, the court could incorporate them into the divorce decree. Again, as in the old statute, such agreement was not modifiable unless the agreement stated or the parties agreed.

In *Lambright v. Lambright*, 12 Kan. App. 2d 211, 212, 740 P.2d 92 (1987), this court found that the 1982 amendment to 60-1610(b)(2) did not apply retrospectively. In that case, Lambright argued that the legislature intended the 1982 amendment to apply retrospectively to divorce decrees entered prior to January 1, 1983. This court found:

"In our view, the legislature did not intend the amendment to operate retrospectively, and since the change of law affected substantive and not procedural rights, the trial court did not err in holding that the 1982 amendment could not be applied retrospectively to extinguish Mr. Lambright's duty to pay alimony after the expiration of 121 months." *Lambright*, 12 Kan. App. 2d at 212-13.

Because the 1982 amendments are not retrospective, the agreement between Mary and William cannot now be modified based on the 1982 amendments.

However, even if the 1982 provisions applied to the instant case, 60-1610(b)(3) would apply because the parties entered into a settlement agreement. "Under K.S.A. 1986 Supp. 60-1610(b)(3) (substantively the same as K.S.A. 1982 Supp. 1610[b][3]), the court has no jurisdiction to modify alimony set by a valid separation agreement incorporated in the decree except as the agreement provides or by consent of the parties." *Bair v. Bair*, 242 Kan. 629, Syl. ¶ 3, 750 P.2d 994 (1988). Because the agreement in the instant case did not give trial court the power to modify the agreement, its provisions cannot be changed by the court absent the consent of both parties under either the 1981 version of the statute or the 1982 amendment.

Next, William argues that trial court had jurisdiction under 60-1610(b) to modify the alimony award. He claims that "support" is not settled under any agreement and therefore the court has continuing jurisdiction to modify it. William cites to *Spaulding v. Spaulding*, 221 Kan. 574, 561 P.2d 420 (1977), for the proposition that a court may modify matters over which it has continuing jurisdiction. In that case, Dr. Spaulding tried to get out of an alimony agreement which terminated only upon the remarriage or death of his ex-wife. The Kansas Supreme Court found:

"The appellant accepted the benefits of the agreement and continued to abide by it for more than two and one-half years. *Payment of alimony settled by mutual agreement of the parties, found by the trial court to be valid, just, and equitable, and incorporated in the decree of divorce, is not subject to subsequent modification by the court except as the agreement itself may prescribe or as the parties may consent.*" (Emphasis added.) 221 Kan. at 578.

The holding in *Spalding* goes directly against William's argument. William also cites to other cases in support of his theory; however, all of these cases can be distinguished. In *Martin v. Martin*, 5 Kan. App. 2d 670, 677, 623 P.2d 527, *rev. denied* 229 Kan. 670 (1981), the appellate court found that it had continuing jurisdiction concerning alimony. That case involved court-ordered alimony rather than alimony agreed upon in the settlement agreement. *Martin*, 5 Kan. App. 2d at 676.

In *Drummond v. Drummond*, 209 Kan. 86, 87, 495 P.2d 994 (1972), the defendant-wife wanted to modify alimony payments. The court found that she had remarried and per the separation agreement, her alimony ceased. The defendant-wife wanted her alimony provisions to be considered a division of property and thereby hoped to prevent it from being eliminated upon her remarriage. The *Drummond* court found:

"A separation agreement is subject to the same rules of law applicable to other contracts and this rule is well stated in *In re Estate of Hill*, 162 Kan. 385, 176 P.2d 515, in Syl. ¶ 4:

'The intention of the parties to and the meaning of a contract are to be deduced from the contract where its terms are plain and unambiguous, and when the language is clear and unequivocal the meaning must be determined by its contents alone, and words cannot be read into a contract which import an intent wholly

unexpressed when the contract was executed. The court may not make an agreement for the parties which they did not make for themselves.'

. . . .

"Regardless of the motives, we do not believe that a defendant, through her counsel, can present a separation agreement to the trial court, seek the trial court's approval, ask the trial court to incorporate it in a decree, and later, by motion, request the trial court to find that this was not the agreement of the parties and it should be set aside or modified. We can readily see that a wife, by way of settlement, could agree to accept a higher alimony award in lieu of an award of specific property. The wife has this right. Having made that decision, she is bound by it and cannot avoid its consequences because of a subsequent decision to again seek the happiness of marriage. Furthermore, the defendant has accepted all the benefits she obtained by the agreement and now seeks to modify that same agreement to avoid its disadvantages. A party may not accept the benefits of a judgment and reject its burdens. [Citation omitted.]" 209 Kan. at 91-92.

The cases cited by William do not provide any support for his argument that the trial court had continuing jurisdiction to modify the alimony payments as set forth in the agreement. Because the parties entered into an agreement, the trial court no longer had continuing jurisdiction to modify the agreement except as stated in the agreement or by an agreement of the parties.

Finally, William argues that K.S.A. 60-260(b) gives the trial court jurisdiction to relieve him of the alimony judgment. William claims it was not equitable for the judgments of alimony to have prospective application.

K.S.A. 60-260(b) states in pertinent part:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." K.S.A. 60-260(b).

"A ruling on a motion for relief from a final judgment filed pursuant to K.S.A. 60-260(b) rests within the sound discretion of the trial court. In the absence of a showing of abuse of discretion, an appellate court will not reverse the trial court's order." *In re Marriage of Zodrow*, 240 Kan. 65, Syl. ¶ 2, 727 P.2d 435 (1986). " 'Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion

is abused only where no reasonable [person] would take the view adopted by the trial court.' " *In re Marriage of Wade*, 20 Kan. App. 2d 159, 168, 884 P.2d 736 (1994), *rev. denied* 256 Kan. 995 (1995).

William cites to *Richardson v. Richardson*, 3 Kan. App. 2d 610, 612, 599 P.2d 320, *rev. denied* 226 Kan. 792 (1979), for the proposition that the court is not deprived of its authority to grant relief from a final judgment under K.S.A. 60-260(b) merely because the judgment is a divorce decree incorporating a property settlement. In that case, however, the land in question in the property settlement agreement was not mentioned during the settlement negotiations, nor was it referred to in the entry of judgment. 3 Kan. App. 2d at 612.

William argues that in order to be relieved from the prospective application of the order for spousal maintenance, the trial court should have considered the change in law or the facts.

Although the legislature did change the laws in 1982, reducing the court's power to award alimony beyond 121 months, it still gave parties the authority to enter into separation agreements and agree to a longer duration of alimony subject to the constraints of the agreement being valid, just, and equitable. Allowing William to modify the alimony pursuant to K.S.A. 60-260(b)(5) would circumvent the agreement into which the parties entered. At the time the agreement was entered into, the present position of the parties was foreseeable. Thus, it does not appear that the trial court abused its discretion in not using K.S.A. 60-260(b)(5) to relieve William of his alimony payments.

We affirm the trial court's ruling as to the alimony payments due to Mary and as to any back child support due because of April.

We reverse the trial court's ruling with respect to the back child support due because of Sandra's minority and remand with instructions for the court to determine the amount of back child support payments necessary to meet the obligation of William to support Sandra, in excess of that already paid and limited by the amount previously ordered by the 1982 court, if any.

Affirmed in part, reversed in part, and remanded.