683 P.2d 878

**Ruth B. LYNCH, Plaintiff-Appellant,**

v.

**Roderick J. LYNCH, Defendant-Respondent.**

**No. 14744.**

Supreme Court of Idaho.

July 9, 1984.

Reginald R. Reeves, Idaho Falls, for plaintiff-appellant.

Marvin R. Stucki, Idaho Falls, for defendant-respondent.

HUNTLEY, Justice.

## I FACTUAL BACKGROUND

Roderick and Ruth Lynch were divorced in 1971. Mrs. Lynch was awarded custody of their two children and Mr. Lynch was ordered to pay her $200 per month for child support. After the divorce Mrs. Lynch and the children moved to California where she eventually remarried.

In 1976 Mr. Lynch ceased making support payments. Five years and eight months later Mrs. Lynch instituted proceedings seeking a delinquency determination against Mr. Lynch for approximately $17,000 plus attorneys fees. He opposed the motion contending that he had been released from his support obligation by his former wife, relying on two phone conversations that took place between them in December, 1975 and February, 1976. He contended that in the first conversation she had stated that her new husband was capable of supporting the children and that she no longer needed his financial help. She denied having made such an assertion. She did agree however, that in their second conversation she told him that her husband wanted to adopt the children and that she would be sending him consent to adoption papers to sign. Mr. Lynch eventually received the papers, signed them, and gave them to his attorney asking him to review them and send them to Mrs. Lynch in California. His attorney then wrote a letter to her attorney saying that the executed consent would be forwarded upon receipt of a release from her right to back support. His attorney was informed that Mrs. Lynch refused the condition. Mr. Lynch maintains that he believed the consent had been sent and the matter finally settled. His counsel apparently never informed him to the contrary. As of the date these proceedings were instituted, one of the children had attained majority; the other child has since come of age.

Mrs. Lynch's second marriage has also broken up. The trial court found that the break-up led her to seek financial assistance from Mr. Lynch for her own support, despite the fact that she knew that he may have believed he had been released from liability. The court ruled that by her conduct she abandoned her right to claim support, and accordingly denied her any relief.

## II PROCEDURAL BACKGROUND

Ruth Lynch moved for a determination of delinquency pursuant to the 1971 decree of divorce. The court considered documentary evidence and heard live testimony from both parties and eventually rendered a decision in favor of Mr. Lynch, which is entitled "SUMMARY JUDGMENT DENIED," even though we note that the record is devoid of any indication that either party moved for summary judgment. The opinion of the court does not express any particular theory as the ground of its decision, nor does it discuss any of the several theories urged by the parties in support of their respective positions. Instead, the court made findings of fact, resolving several disputed questions of fact in favor of Mr. Lynch, and determined that Mrs. Lynch was foreclosed from relief based on her conduct. She appealed from that decision.

## III DISCUSSION

The inconsistent procedure employed by the district court leaves us no choice but to

vacate the judgment and remand the cause for further proceedings.

The judgment of the lower court is framed as denial of summary judgment. Several problems are presented thereby. First of all, in addition to considering proper documentary evidence, the court heard live testimony, thereby converting the non-existent motion for summary judgment into a full trial; with the result that its denomination of the judgment is inconsistent and inappropriate. That fact standing alone would not necessarily constitute error, but viewed in light of other procedural errors demonstrates the need to reverse for a new trial.

More serious errors are revealed by examining the actions of the lower tribunal against the legal standard applicable to summary judgment. It is well-established that summary judgment is appropriate only when there exist no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Idaho R.Civ.P. 56. In this case however, it is apparent that issues of fact did exist, which we can reasonably infer as having been "genuine" and "material", as the court not only resolved those issues, but made them the basis of its opinion. Most crucial to our holding today though, is the fact that no legal theory or standard was articulated as the basis of the decision, despite the fact that both parties pled legal theories in support of their respective positions. Mr. Lynch's primary defense was laches, and although the court's ruling seems to be based on Mrs. Lynch's delay in bringing the suit, the trial court made neither findings nor conclusions which would clearly demonstrate that the essential elements of that defense have been established. No cases or statutes were cited; there simply is an utter absence of any judicial reliance on either a rule of law or guiding principle of equity.

In short, there is no basis of review by this court. Since we cannot determine on what legal basis, if any, the district court ruled that Mrs. Lynch was not entitled to judgment as a matter of law, the judgment must be vacated and the cause remanded for further proceedings.

No attorneys fees. Costs to respondent.

DONALDSON, C.J., and BAKES and BISTLINE, JJ., concur.

SHEPARD, Justice, dissenting.

While I understand and share the frustration of the majority with the state of the record brought to us, I believe that the record, albeit borderline, is sufficient for this Court to make a decision and put an end to this litigation. As noted by the majority, the district court's disposition of the matter is labeled "summary judgment denied." Ordinarily, this Court would dismiss an attempted appeal from the denial of summary judgment since such an order, by its nature, contemplates further proceedings which will result in an ultimate judgment and there is always the possibility the trial judge may at a later time reverse himself. However, in the instant case, it is my view that the district judge clearly believed that he was entering a final judgment in the cause since in the last portion of his order which is denominated "Judgment," he held, "the prayer for a judgment for back support is denied." The record here reflects what is evidently the practice of plaintiff's counsel to file a motion for summary judgment and for an order determining the delinquencies which have accrued in child support pursuant to a decree, for an order of contempt, and for reasonable attorney's fees. Such a motion was made and granted in 1972 in the instant case and a summary judgment was issued thereon. However, at a later time in October 1981, plaintiff's counsel filed a motion for determination of defendant's delinquency and for attorney's fees. I believe it is reasonably clear from the record that the trial judge determined that there were issues of fact to be determined and, therefore, as noted by the majority opinion, testimony was taken thereon, after which the trial judge issued his decision denying the relief plaintiff had sought.

I believe that, in the interest of judicial resource economy, justice would be best served by putting aside procedural niceties and resolving the dispute.

The dispute revolves around allegedly delinquent child support payments from 1976 until each of two children reached the age of majority. One child reached the age of majority in July 1978, and the second in February 1982. Hence, as of this date, the children are 24 and 20 years old, respectively. It was not until October 15, 1981 that plaintiff filed the motion which is the subject of the instant action for a "determination of delinquency." The motion was not brought to hearing before the trial court until March 29 and May 17 of 1982.

As noted by the majority opinion, the record of the trial court's action is far from clear, but the following can be gleaned from the record. Testimony was received from both the defendant and the plaintiff, some of which was sharply conflicting. The defendant's theory of the case was that in 1975, plaintiff had contacted him, indicated that she had remarried, that her new husband was wealthy and could support the two children, and that she neither wanted nor would accept further child support payments from him. He further contended that in early 1976, plaintiff again contacted him stating that she and her new husband were initiating adoption proceedings and desired defendant's consent that the two children be adopted by her new husband. Documentary evidence was introduced indicating that the adoption consent was executed. Following the close of the hearing, defendant submitted, by way of a brief to the trial court, his legal theories of laches and equitable estoppel.

Plaintiff, on the other hand, in her testimony denied the alleged telephone conversation of 1975, wherein she supposedly forgave his past or future child support obligation on the part of the defendant, admitted that in early 1976, she and her then husband initiated adoption proceedings in California and sought the defendant's consent to that adoption. Plaintiff, however, contended that the adoption proceedings were not consummated because defendant's consent was conditioned on the waiver of past and future child support payments, and she, the plaintiff, would not waive back child support payments.

Additional testimony of the defendant indicated that he did not until October 1981, learn that his children had not been adopted by plaintiff's then husband and that, in reliance upon his belief of adoption, he terminated any visitation or contact with his children.

The trial court thereafter entered findings of fact, but, as noted by the majority opinion, entered no conclusions of law or announced any legal theories upon which his decision was based. Nevertheless, his findings of fact clearly indicate to me that he believed the testimony of the defendant as contrasted with the testimony of the plaintiff. He found that the defendant had made support payments until February of 1976, and found that, "Plaintiff made some statement to defendant that since her remarriage she no longer needed help from the defendant because her new husband was capable of supporting them." He found, "She (plaintiff) appears to have told him that she intended to work out an adoption by her then husband whether he, defendant, would cooperate or not. She asked for a consent to adoption and relinquishment of his right to visitation. He agreed." He found, "He (defendant) believed the consent had been sent and the contract fulfilled. He did not make any attempts to visit his children. Defendant believed the matter was settled. Plaintiff encouraged such belief ... A payment to plaintiff now, though termed a payment for support of children, would not actually be for the children because they have reached their majority."

Although I agree with the majority that the decision of the trial court could better have been supported by enunciating some legal theory for its decision and some authority in support thereof, nevertheless, as above noted, this Court does have before it the findings of the trial court made after hearing the testimony of both parties. It

would be an invasion of the province of the trial court for this Court to readjudicate the controverted facts in the absence of a showing of abuse of discretion of the trial court or an absence of evidence to support those findings. Here there appears to be ample evidence to support the findings of the trial court. In the usual situation, I think the court would be amply justified, on the basis of this record, in vacating the "Judgment" of the trial court and remanding the cause to that trial judge for the entry of conclusions of law and a clear judgment entered thereon. However, in the instant case the trial judge has retired and any judge to whom the case was assigned would necessarily have to begin anew, since I believe it would be unfair to require him to determine from the cold transcript which testimony he would choose to believe and accept. I believe judicial resources would be best utilized in this Court accepting the findings of fact of the trial court and determining whether a legal theory exists which justifies the trial court's decision. In my view, such a theory does exist in laches and equitable estoppel. *See Heidemann v. Heidemann,* 96 Idaho 602, 533 P.2d 96 (1974); *Despain v. Despain,* 78 Idaho 185, 300 P.2d 500 (1956); *Larsen v. Larsen,* 5 Utah 2d 224, 300 P.2d 596 (1956); *McKee v. McKee,* 154 Kan. 340, 118 P.2d 544 (1941).

Here the facts, taken from defendant's viewpoint, indicate that defendant made child support payments until plaintiff informed him they were not needed. Thereafter, plaintiff informed defendant of pending adoption proceedings and defendant believed they had gone forward. The children used the name of plaintiff's new husband. Defendant somehow communicated with the trial court regarding his discontinuance of child support payments. Defendant thereafter, discontinued any visitation or contact with his children. Plaintiff did not show that the moneys she sought were necessary for the support of the children and, in fact, she testified at trial that the only reason she sought the moneys, since the children had both reached the age of

majority, was to assist in their college education.

Although, if sitting as a trial judge, I might have made different findings, nevertheless, I would affirm the findings of fact of the trial judge as being supported by the evidence and I would affirm the "Judgment" of the trial court in denying the relief sought by plaintiff.