No. 55,516

EDNA ALICE DALLAS, *Appellant*, v. EARL CLAY DALLAS, *Appellee*.
(689 P.2d 1184)

Opinion filed October 26, 1984.

*Patrick Caffey*, of Littrell & Caffey, of Manhattan, argued the cause and was on the brief for the appellant.

*Howard Fick*, of Fick & Kieffer, of Manhattan, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: Edna Alice Ward (formerly Dallas) appeals from a judgment determining that her former husband, Earl Clay Dallas, has paid all past due child support. The Court of Appeals affirmed the ruling of the trial court in an unpublished opinion filed February 23, 1984, and we accepted review.

The parties were divorced on June 22, 1967. The court ordered the appellee to pay $175 per month for the support of the Dallas' two minor children. In March of 1969, the appellee fell behind in his child support payments and for the next ten years he paid less than the required $175 per month. His usual payments were

between $130 to $145. By February 1979 he was substantially in arrears. The older of the two children turned eighteen that month, and the $175 monthly obligation was hence reduced by half, to $87.50, under the rule in *Brady v. Brady*, 225 Kan. 485, 491, 592 P.2d 865 (1979).

The appellee continued to pay $145 per month until January 1980. That month he paid nothing and for the first time, the appellant filed a garnishment against him.

The appellee resumed payments, which continued until May 1982, a full year after the second child turned eighteen. In December, 1982, the appellant moved for an order determining the amount of unpaid child support. The trial court ruled that any payments due before January 21, 1975, were unenforceable dormant judgments. The court also held the appellee had paid all past due support which had not become dormant:

"6) That between February 1975 and February 1979 (when the obligation was reduced to $87.50 per month) the defendant was delinquent in child support in the total sum of $1,675.20 which is broken down to be $1,440.00 in past due support and $235.20 in accrued interest.

"7) That by applying the amount over-paid by defendant from February, 1979 first interest and then the past due child support, the Court finds the defendant to have completely paid off any arrearage by May, 1981, after the defendant's obligation to pay child support ceased.

"8) That all payments by defendant since May, 1981, are now considered by the Court to be gratuitous payments of support due prior to February, 1975, which are not now collectable because such judgments lapsed and were not revived.

"9) That the defendant's obligation to pay child support has long since terminated and there are no amounts of past due support which may be collected."

The sole issue on appeal is whether the trial court erred in holding child support payments due before January 21, 1975, were dormant pursuant to K.S.A. 60-2403.

Installment payments for child support become final judgments when due. Such judgments may be enforced like other judgments and are subject to the dormancy statute, K.S.A. 60-2403. See *Riney v. Riney*, 205 Kan. 671, Syl. ¶ 1, 473 P.2d 77 (1970).

The appellee paid less than the required amount 132 times between March, 1969, and February, 1980, so there were 132 separate judgments against him. The trial court ruled that all payments due before January 21, 1975, were dormant judgments. The total amount of the dormant judgments was $3160, excluding interest.

Appellant first argues it is against public policy to apply the dormant judgment statute to underpayments of child support. She then cites cases pertaining to the statute of limitations. These cases, as well as K.S.A. 60-520, provide that partial payment by a debtor will toll the statute of limitations. The statute of limitations however, is not at issue here; rather, the dormant judgment statute, K.S.A. 60-2403, is controlling. It provides:

"If execution, including any garnishment proceeding and any proceeding in aid of execution, shall not be sued out within five (5) years from the date of *any judgment*, including judgments in favor of the state or any municipality in the state, that has been or may hereafter be rendered, in any court of record in this state, or within five (5) years from the date of any order reviving such judgment, or if five (5) years have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor." (Emphasis added.)

We note this statute speaks of "all judgments" making no exception for child support judgments. It makes no provision for partial payments tolling dormancy. Only the issuance of execution or garnishment will toll the dormancy statute. See *First National Bank v. Harper*, 161 Kan. 536, 169 P.2d 844 (1946). Appellant did not seek execution or garnishment until January 21, 1980, thus the judgments for unpaid child support due more than five years before that date are dormant.

Let us now turn to a consideration of how many of the judgments are dormant. Appellant argues that once appellee fell behind in his payments, each payment made thereafter should apply first to interest and then to principal on the overdue child support payments. Only after such application of the funds would payments be applied to the current support obligation. This is known as the United States Rule. Under this theory, the judgments, otherwise dormant, would have been paid in full, leaving only the more recent judgments unpaid.

In *Shutts, Executor v. Phillips Petroleum Co.*, 222 Kan. 527, Syl. ¶ 24, 567 P.2d 1292 (1977), *cert. denied* 434 U.S. 1068 (1978), we followed *Jones v. Nossaman*, 114 Kan. 886, 221 Pac. 271 (1923), and *Christie v. Scott*, 77 Kan. 257, 94 Pac. 214 (1908), and held the United States Rule applied to a partial payment on an interest-bearing debt, in the absence of an agreement or a statute to the contrary, and such payments applied first to interest, then

to principal. The application of the United States Rule to the child support judgments in this case would leave only the non-dormant judgments unpaid. The Court of Appeals, citing *Aetna Casualty and Surety Co. v. Hepler State Bank,* 6 Kan. App. 2d 543, Syl. ¶ 13, 630 P.2d 721 (1981), in this case held: "If a debtor owes a creditor more than one debt, in the absence of a direction from the debtor to the creditor as to how a payment is to be applied, the creditor may elect to apply it to any debt he chooses." It then applied *Aetna* to the instant case and ruled there was no showing Mrs. Ward elected to apply each monthly payment to interest and overdue principal. The court then concluded, after examining appellant's record of payments from Mr. Dallas, that she had applied each payment as a partial payment of the $175 judgment due each month. Our examination of exhibit B confirms this finding. Thus, under the *Aetna* rule which allows the creditor, under the circumstances of this case, the privilege of applying a partial payment on multiple debts to the debt of her choosing, Mrs. Ward chose to apply the payments to the current monthly obligation. Her choice precludes the application of the United States Rule on all of the payments not in excess of the monthly judgments. This is consistent with other decisions of this court with regard to underpayment of child support. In *McKee v. McKee,* 154 Kan. 340, 118 P.2d 544 (1941), we treated a $10 monthly deficiency in child support over a 19-year period as shortages for each month. Thus, the dormancy statute applied, allowing recovery for the deficiencies only in the last five years. See also *Riney v. Riney,* 205 Kan. at 679; *Peters v. Weber,* 175 Kan. 838, 843-44, 267 P.2d 481 (1954); *Sharp v. Sharp,* 154 Kan. 175, 181, 117 P.2d 561 (1941).

In addition, K.S.A. 60-1610(a)(1) provides for support and education of minor children, making no provision for application of the funds other than for such support. The statute thus contemplates the use of such funds for support rather than for the reimbursement of funds to the custodial parent for past deficiencies. This shows Mrs. Ward correctly applied the support payments to current support.

We hold the United States Rule is not applicable to child support payments which are not overpaid. Such payments are exceptions to that rule. However, since the parties made no choice about overpayments, we conclude the United States Rule

is applicable to such payments. In the absence of direction from either the debtor or creditor, overpayments of child support shall be applied first to interest, then to overdue support dating back to the earliest nondormant judgment.

The judgments of the Court of Appeals and the trial court are affirmed.