(14 P.3d 1189)

No. 84,345

STATE OF KANSAS, *Appellee*, v. LEWIS D. MORRISON, *Appellant*.

Opinion filed December 8, 2000.

*Gary A. Nelson*, of Murray, Tillotson, Nelson & Wiley, Chartered, of Leavenworth, for the appellant.

*Frank E. Kohl*, county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before GREEN, P.J., PIERRON, J., and RAWLEY JUDD DENT II, District Judge, assigned.

PIERRON, J.: Lewis D. Morrison appeals the trial court's decision setting aside a release of a restitution order entered against him in a criminal case 12 years ago. Morrison argues the trial court erred in holding his regular payments were sufficient to toll the dormancy of the judgment.

On April 30, 1985, Morrison was convicted of two counts of arson. He was sentenced to concurrent terms of 5 to 10 years' incarceration and ordered to pay $63,737 in restitution as a condition of early release or parole. On April 11, 1986, Morrison was paroled for the balance of his sentence and placed on probation for 5 years. A condition of Morrison's probation was that he pay restitution. On February 4, 1987, the court entered a restitution

order for $63,737 and also detailed how Morrison's restitution payments would be scheduled.

On April 4, 1991, the district court entered an order extending Morrison's probation for an additional 5-year period. In February 1996, the court entered a journal entry granting the State's motion for citation for criminal indirect contempt. The journal entry provides that Morrison agreed to pay $100 per month until the balance of his restitution was paid in full. It also states that Morrison's probation was terminated.

Morrison made the court-ordered payments on his restitution order until February 5, 1999, when he filed a motion entitled: "Release of Restitution Order Pursuant to K.S.A. 60-2403(d)." Morrison claimed the State had not filed a revivor of the judgment and no execution or garnishment had ever been issued. Morrison argued the restitution order became dormant on February 4, 1997, and had remained dormant for the required 2-year period, and he was entitled to release of the judgment. The district court granted Morrison's request and released the judgment.

The State filed a motion to set aside the release of the restitution order on the basis that Morrison had been making regular payments. After an evidentiary hearing, the district court agreed with the State and found the judgment against Morrison was not dormant because he had made monthly restitution payments as ordered by the court. The district court reinstated the earlier court order requiring Morrison to make monthly payments of $100.

Morrison contends the district court was correct when it initially found he was entitled to release of the judgment under K.S.A. 1999 Supp. 60-2403(d). He argues the district court erroneously revoked its order by holding that his partial payments tolled the dormancy of the judgment. Morrison indicates the State never filed a renewal affidavit or issued execution on the restitution judgment during the 10 years following issuance of the restitution order or during the 2 years following the 10-year period when the judgment was considered dormant. As a result, he argues, he is entitled to release of the judgment.

On the other hand, the State argues the payment of restitution in a criminal case is not only governed by the civil procedure stat-

utes in Chapter 60, but also the more specific criminal statutes in Chapter 21. The State contends the criminal statutes provide for an order of restitution in I .A. 1999 Supp. 21-4610(d)(1) and also provide in K.S.A. 1999 Supp. 21-4611(c)(5) for extension of a defendant's probation period for as long as there is unpaid restitution. The State maintains Morrison's interpretation of this case would allow a defendant to terminate his or her own probation period by filing for a civil release of judgment concurrent with stopping a regular pattern of payments.

No Kansas cases have interpreted K.S.A. 1999 Supp. 60-2403(d), which was added by the Kansas Legislature in 1995. That year, the legislature amended several statutes concerning criminal restitution. K.S.A. 21-4603d(a) was amended to provide for the mandatory payment of restitution as additional punishment:

"In addition to or in lieu of any of the above [criminal dispositions], the court *shall order* the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." (Emphasis added.)

See L. 1995, ch. 257, § 1; In a letter to the House Judiciary Committee dated February 13, 1995, Carla J. Stovall, Attorney General, stated:

"Crime victims too often are without any financial resources to assist in the restoring of property, medical bills, [lost] wages, etc., that they face after a crime. The offender should be held accountable for those losses and the court should not only order restitution but hold the offender accountable to pay the restitution. Mandatory restitution is another tool in which offenders can learn they are personally responsible and accountable for their acts."

The impetus of the 1995 restitution amendments was to make restitution orders more meaningful, enforceable, and collectable. To assist in the collection of the now mandatory restitution orders, the legislature converted all criminal restitution orders into civil judgments. The legislature added K.S.A. 22-3424(d), which provided:

"If the verdict or finding is guilty, upon request of the victim or the victim's family and before imposing sentence, the court shall hold a hearing to establish restitution. The defendant may waive the right to the hearing and accept the

amount of restitution as established by the court. If the court orders restitution to be paid to the victim or the victim's family, the order shall be enforced as a judgment of restitution pursuant to K.S.A. 1995 Supp. 60-4301 through 60-4304."

Another witness statement to the House Judiciary Committee indicated:

"This bill simply makes a restitution order meaningful by converting the order to a civil judgment. This allows a crime victim the same tools to collect on a restitution order as our civil courts allow to a plaintiff in a civil judgment.

"Shouldn't we provide the same mechanism for enforcement to a victim of a crime as we do for a victim of negligence?"

In a memorandum to the House Judiciary Committee dated February 4, 1995, Charles E. Simmons, Secretary of the Department of Corrections, stated:

"Giving restitution orders enforceability as civil judgments is especially important in light of Sentencing Guidelines Act provisions which limit postrelease supervision for crimes committed after July 1, 1993 to either 12 or 24 months (plus earned good time credits). If the restitution is not paid in that time period, under current law the State has no way to enforce the restitution order. Making restitution enforceable as a civil judgment will allow the restitution order to survive the period of parole or postrelease supervision, thus enabling crime victims to have a longer period of time in which to obtain full satisfaction of the restitution order."

In allowing victims to use civil collection remedies to put some teeth in the restitution orders, the legislature also clearly set the outer boundaries of collecting the restitution. The legislature amended the dormancy provisions of the Kansas statutes to specifically allow restitution orders to become dormant if certain circumstances are met. K.S.A. 1999 Supp. 60-2403(d) states:

"If a renewal affidavit is not filed or if execution is not issued, within 10 years from the date of the entry of any judgment of restitution in any court of record in this state, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. Except as provided in subsection (b), when a judgment becomes and remains dormant for a period of two years, it shall be the duty of the clerk of the court to release the judgment of record when requested to do so."

The intent of the legislature is clear. "It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascer-

tained. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998). Restitution orders are subject to dormancy under K.S.A. 1999 Supp. 60-2403(d).

The law in Kansas concerning the dormancy of judgments is well established. Although no cases have interpreted K.S.A. 1999 Supp. 60-2403(d), the interpretations of the general dormancy provisions in K.S.A. 1999 Supp. 60-2403(a)(1) are equally applicable. The dormancy period for a general judgment is 5 years. K.S.A. 1999 Supp. 60-2403(a)(1). The court in *Long v. Brooks*, 6 Kan. App. 2d 963, 966, 636 P.2d 242 (1981), gave the following summary:

"The questions relating to the dormancy and extinguishment of Kansas judgments, presented by this appeal, were effectively determined by this court in *Clark v. Glazer*, 4 Kan. App. 2d 658, 609 P.2d 1177 (1980). In that case we said that, pursuant to K.S.A. 60-2403, judgments grow dormant in five years, if not enforced by execution, garnishment or proceeding in aid of execution; and, if not revived, as provided in K.S.A. 60-2404, such dormant judgments become absolutely extinguished and unenforceable two years thereafter. *Glazer* makes plain that *nothing* other than revivor under K.S.A. 60-2404 can serve to revitalize a dormant judgment and that, once the period for revivor passes, there is absolutely nothing left of that judgment to which even 'equitable principles could be applied.' 4 Kan. App. 2d at 661. A review of K.S.A. 60-2404 reveals that revivor of dormant judgments can *only* be accomplished by a combination of (1) a motion for revivor, coupled with (2) a request for the immediate issuance of an execution, garnishment or attachment. Accordingly, we are obliged to conclude, again contrary to the result reached below, that, in the case at bar, neither Richard's affidavit in contempt (filed in the sixth year following the entry of the judgment) nor Bonnie's failure to raise the dormancy of the judgment in the original contempt proceeding (held in the seventh year of the dormant and unrevived judgment) were sufficient to revive the judgment contained in the divorce decree."

The court in *Riney v. Riney*, 205 Kan. 671, 680, 473 P.2d 77 (1970), also gave the following interpretation:

"Under K.S.A. 60-2403 and 60-2404 a party may, by the issuance of executions every five years, keep a judgment alive indefinitely. The judgment remains in force without execution for five years, and the plaintiff may revive it at any time within two years if it has become dormant thereafter, so that practically a plaintiff may neglect his judgment for seven years, lacking a day, and then revive and put it in force for five years more. [Citation omitted.]"

Kansas law is also equally clear on the effect of partial payments as affecting the dormancy of a judgment. In *Dallas v. Dallas*, 236

Kan. 92, 93, 689 P.2d 1184 (1984), the court considered the application of 60-2403 to child support payments. For over 10 years, the father in *Dallas* failed to make his *full* child support payment. The father argued, and the *Dallas* court agreed, that all underpaid payments within the 5 years following each of the child support payments were dormant judgments. Policy arguments very similar to those in the case at bar were made in *Dallas*:

"Appellant [mother] first argues it is against public policy to apply the dormant judgment statute to underpayments of child support. She then cites cases pertaining to the statute of limitations. These cases, as well as K.S.A. 60-520 provide that partial payment by a debtor will toll the statute of limitations. The statute of limitations however, is not at issue here; rather, the dormant judgment statute, K.S.A. 60-2403, is controlling. It provides:

'If execution, including any garnishment proceeding and any proceeding in aid of execution, shall not be sued out within five (5) years from the date of *any judgment*, including judgments in favor of the state or any municipality in the state, that has been or may hereafter be rendered, in any court of record in this state, or within five (5) years from the date of any order reviving such judgment, or if five (5) years have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor.' (Emphasis added.)

"We note this statute speaks of 'all judgments' making no exception for child support judgments. It makes no provision for partial payments tolling dormancy. Only the issuance of execution or garnishment will toll the dormancy statute. See *First National Bank v. Harper*, 161 Kan. 536, 169 P.2d 844 (1946). Appellant did not seek execution or garnishment until January 21, 1980, thus the judgments for unpaid child support due more than five years before that date are dormant." 236 Kan. at 94.

K.S.A. 1999 Supp. 60-2403(d) provides that "any judgment of restitution" in which a renewal affidavit is not filed or execution is not issued within 10 years is considered dormant. A restitution judgment that is dormant is not void; it may be revived and have the same force and effect as if it had not become dormant. K.S.A. 60-2404. K.S.A. 1999 Supp. 60-2403(d) makes no provision for partial payments tolling dormancy. If a restitution judgment has remained dormant for the specified period of time, 2 years, it becomes absolutely extinguished and unenforceable.

The legislature extended the time for criminal restitution judgments to be active beyond regular civil judgments but did not change the need for the filing of executions and revivors to keep a judgment alive. It made no exception for cases where payments were being made. The legislature could modify the law to do so, but has not.

We find the district court erred in setting aside its previous order releasing Morrison of the judgment of restitution.

Reversed.