**In re Thomas G. RUCK, Theresa A. Ruck, Debtors.**

No. 10–12479.

United States Bankruptcy Court, D. Kansas.

May 18, 2011.

Calvin L. Wiebe, Wiebe Law Office, P.A., Wichita, KS, for Debtors.

J. Michael Morris, Wichita, KS, Trustee.

### ORDER GRANTING CENTRAL NATIONAL BANK'S MOTION FOR SUMMARY JUDGMENT

ROBERT E. NUGENT, Chief Judge.

The Debtors Thomas and Theresa Ruck moved to avoid the lien of a foreclosure judgment that impairs two tracts that they have claimed exempt, citing 11 U.S.C. § 522(f)(1).[1] In support of their motion to avoid, they claim that the judgment is not only a judicial lien, but also that the judgment has lapsed according to Kansas law. The owner of the judgment, Central National Bank (Central), objected to the lien avoidance motion and objected to the debtors' claim of exemptions as well. Central moves for summary judgment.[2] After reviewing the parties respective submissions, the Court is prepared to rule.[3]

The Court has jurisdiction over this contested matter.[4] The matter is a core proceeding.[5]

### SUMMARY JUDGMENT STANDARDS

Federal Rule Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."[6] The Court's function in reviewing a motion for summary judgment is to first determine whether genuine disputes as to material facts exist for trial. In making this determination, the Court may not weigh the evidence nor resolve fact issues.[7] The Court must construe the record in a light most favorable to the party opposing the summary judgment.[8]

1. Dkt. 35.

2. Dkt. 57, 58.

3. Debtors appeared by their attorney Cal Wiebe. Central National Bank appeared by its attorney Michael Munson.

4. 28 U.S.C. § 1334.

5. 28 U.S.C. § 157(b)(2)(A), (B), and (K).

6. All future references to "Rule" will refer to the Federal Rules of Civil Procedure, which apply to adversary proceedings under Federal Rule Bankruptcy Procedure 7001, *et seq.*, unless otherwise noted. Before December 1, 2010, Rule 56 provided that summary judgment should be rendered if there is *"no genuine issue as to any material fact* and that the movant is entitled to judgment as a matter of law."

7. *First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank,* 215 F.3d 1147, 1154 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Concrete Works of Colo., Inc. v. City and County of Denver,* 36 F.3d 1513, 1518 (10th Cir.1994) (Court may not resolve disputed questions of fact at the summary judgment stage).

8. *McKibben v. Chubb,* 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

Once the Court determines which facts are not in dispute, it must then determine whether those uncontroverted facts establish a sufficient legal basis upon which to grant movant judgment as a matter of law.[9] If different ultimate inferences may properly be drawn from the facts, summary judgment is not appropriate.[10]

## UNCONTROVERTED FACTS

Central relies on its extensive statement of facts, nearly all of which are uncontroverted.[11] Thomas and Theresa Ruck were married. Mrs. Ruck died on July 25, 2010, just days after the Rucks filed this case. In 1996, the Rucks made two promissory notes to Central and granted two mortgages that encumbered different tracts, to secure the repayment of both notes. The mortgages covered property in Marion County commonly known as * * * * Remington (Remington Property) and * * * * 275th Street (275th Property). In 1998, they gave a third note to Central and granted a second mortgage on the 275th Property to secure it. The Rucks defaulted on their obligations under these notes and Central foreclosed in state court, filing Marion County Case No. 01–C–28 in May of 2001. On December 20, 2001, the state court entered its Journal Entry of Judgment in which Central received a judgment on all three notes and a decree foreclosing all three mortgages.

The first paragraph in the decretal portion of the Journal Entry reads:

By agreement of the parties, Plaintiff [Central] shall not execute on its judgments herein, or conduct a Sheriff's sale of the foreclosed property, so long as it receives [payments]. . . .[12]

Highly summarized, the debtors were to make $350 monthly payments on the first note's judgment and $175 monthly payments on the second until they were both paid. When one of the notes was paid, the debtors were to begin payments of $350 monthly on the third note's judgment until it was paid. If the debtors missed any payments, after 10 days, Central could execute on its judgment and apply to the state court for an order of sale. The debtors made and continue to make these payments and have paid Central over $47,000 through August 30, 2010. No executions or orders of sale have been requested by Central and none has been issued by the state court. Central has filed no renewal affidavits or applications for revivor of the judgments contained in the Journal Entry.

The Rucks filed this chapter 7 bankruptcy on July 22, 2010. They exempted both tracts as their respective homesteads on Schedule C. In January of 2010, Thomas filed for divorce from Theresa. They had previously been divorced in 2003, but had remarried in 2008. While the Rucks were divorced, Theresa lived at the Remington Property and Thomas lived at the 275th Property. The Rucks claim that they in-

9. *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F.Supp. 406, 407 (D.Kan.1986) (Even if there are no genuine issue of material fact, the movant still has the burden to show it is entitled to judgment as a matter of law.).

10. *Sec. Nat. Bank v. Belleville Livestock Comm'n Co.*, 619 F.2d 840, 847 (10th Cir. 1979).

11. The Rucks' attempted controversions mainly consist of repeated statements that the Court should, as it always does, disregard

editorial or conclusory comments in the affidavit of the Loren Barten, a bank officer. Similarly, Central's controversion of some of the Rucks' statements alleges that some of the facts alleged are irrelevant to the instant dispute. We need not tax this record with an exhaustive discussion of these positions; rather the facts in this case are pretty straightforward and are summarized in this section.

12. Dkt. 58–8, Ex. 7, p. 8.

tended to resume this arrangement upon completion of the 2010 divorce case, but in the spring of 2010 cancer intervened and Theresa fell ill.[13] The debtors claim that the Remington house was not in good condition and that Theresa remained at the 275th Property with Thomas so her family could care for her.[14] She succumbed to the cancer on July 25, 2010, three days after filing this case. Thomas filed Schedule C on September 8, 2010 in which the debtors sought to exempt both tracts as separate homesteads. While there is nothing in the record bearing on the respective location of these tracts, the Court observes that the Remington Property is located in the Southeast Quarter of Section 19, Township 18 South, Range 4 East of the 6th P.M. while the 275th Property sits in the Southeast Quarter of Section 24, Township 18 South, Range 3 East of the 6th P.M. While the sections abut one another (S24–T18S–R3E lies due east of S19–T18S–R4E), each tract lies within the southeast quarter of its section. They cannot be contiguous. Each tract is defined by metes-and-bounds and appears to be land-locked within its respective quarter section. The tracts are likely not more than a mile apart. Both Rucks inhabited the 275th Property on the petition date.

## ANALYSIS

### Judicial Lien Avoidance under § 522(f)(1)

█ The Rucks move to avoid the lien of Central's Journal Entry as a judicial lien and invoke the provisions of § 522(f)(1). That section provides:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3),

the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5) [a domestic support obligation];

Thus, a debtor may seek to have a judicial lien avoided if it impairs property that debtor may exempt. Subsection (f)(2)(A) states that "a lien shall be considered to impair the exemption" to the extent the sum of the lien, all of the other liens on the property, and the amount of the exemption the debtor could claim in the property exceed the value of the debtor's interest in the property. Subsection (f)(2)(B) states that where the property is subject to more than one lien, an avoided lien does not count in the calculation. Subsection (f)(2)(C) states:

> (C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

This subsection excepts mortgage foreclosure judgments from consideration as a "lien … considered to impair an exemption" as referenced in (f)(2)(A).

The term "judicial lien" is defined in the Code at § 101(36) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." A "lien" is a "charge against or interest in property to secure payment of a debt or performance of an obligation."[15] Notably, a "security interest" is separately defined

---

**13.** There is no record support for their claimed intention to live separately.

**14.** This factual allegation is also unsupported in the record, but the Court may draw inferences in favor of the Rucks as non-moving

parties and will infer from Mrs. Ruck's death three days after filing that this is the case. It is certainly plausible.

**15.** 11 U.S.C. § 101(37).

in the Code at § 101(51) as a "lien created by an agreement[.]"

■ The Rucks' motion to avoid is predicated on the supposition that when a note is reduced to judgment and a foreclosure decree is entered authorizing the sale of the mortgaged property, the mortgage lien merges into the judgment and that renders it a judicial lien. They argue that the exceptional language in § 522(f)(2)(C) does not operate to except foreclosure judgments from being avoided like other judicial liens under § 522(f).

The Tenth Circuit Bankruptcy Appellate Panel has held that a foreclosure judgment is not a judicial lien because it is the result of a consensual agreement (the note and mortgage) of the parties. In *In re Nichols*, the court dealt with facts nearly identical to these, applying Oklahoma law.[16] The debtors sustained a judgment foreclosing their home mortgage, but filed bankruptcy before a sale could be held. They argued that the foreclosure judgment was an avoidable judicial lien that impaired their homestead. The *Nichols* court noted that a security interest, being a consensual lien, is substantially different in form from a judicial lien. Because the creditor's interest in the Nichols' land arose from a security interest created by an agreement, and not merely from a judgment, the lien of the foreclosure decree was a security interest to which § 522(f)(1)(A) does not apply. Oklahoma

law provides that a mortgage lien does not merge into a foreclosure decree, nor is it extinguished by one. The lien is only extinguished by the foreclosure sale.

■ The Rucks erroneously argue that under Kansas law a foreclosed mortgage merges into and is extinguished by the entry of foreclosure judgment. Their case citations do not support that statement. They rely on cases that hold that a junior lienholder's mortgage is extinguished upon the purchase of the encumbered land by the senior lienholder at a sheriff's sale.[17] In *Fidelity Bank v. King*, a junior lienholder entered a general appearance in the case, but did not otherwise participate. Citing the *Restatement (Third) of Property*, the Court of Appeals noted that a judicial sale conducted to foreclose a senior lien terminates the interests of any junior lienholders, except in the equitable circumstance where the judgment debtor acquires the property.[18] While it is true that a Kansas mortgage that has been reduced to judgment cannot be foreclosed again, the debtors point to no Kansas authority that provides that a judgment creditor's senior mortgage loses its lienholder status when the decree is entered.[19] To the contrary, it is the foreclosure sale, not the mere entry of the decree, that terminates the relationship of the mortgagor and mortgagee,[20] While the mortgage may have "merged" into the foreclosure decree, that does not convert

**16.** 265 B.R. 831 (10th Cir. BAP 2001).

**17.** *Fidelity Bank v. King*, 33 Kan.App.2d 804, 109 P.3d 180 (2005).

**18.** *See Restatement (Third) of Property*, § 7.1.

**19.** *Dumont v. Taylor*, 67 Kan. 727, 74 P. 234 (1903) (foreclosed lien merges into judgment and cannot be subject of further foreclosure action). This rule was codified in KAN. STAT. ANN. § 60–2414(k) (no second sale permitted).

**20.** *See Application of Small Business Admin. for Exemption from Ad Valorem Taxation in Meade County, Kan.*, 14 Kan.App.2d 600, 604, 797 P.2d 879 (1990); *Mid Kansas Federal Sav. and Loan Ass'n of Wichita v. Zimmer*, 12 Kan. App.2d 735, 740, 755 P.2d 1352 (1988); *Federal Land Bank of Wichita v. Brown*, 15 Kan. App.2d 302, 305–06, 807 P.2d 702 (1991) (After creditor forecloses its mortgage lien and sells the property at sheriff's sale, creditor no longer has a lien in the property with a right to redeem.).

the consensual lien of the mortgage to a judicial lien that is avoidable by use of § 522(f)(1).

Many courts so hold.[21] Indeed, even in the *Hart* case relied on so heavily by the debtors, the First Circuit held that § 522(f)(2)(C) "contrast[s] mortgage foreclosure judgments from liens which are avoidable under § 522(f), clarifying that the entry of a foreclosure judgment does not convert the underlying consensual mortgage into a judicial lien which may be avoided. Mortgage foreclosure judgments do not become judicial liens subject to avoidance under § 522."[22] *Hart* dealt with a markedly different set of facts than those at bar. There, the debtors suffered the foreclosure and sale of their home in Maine. They also owned property in Massachusetts. After the judicial sale of the Maine land, the lender enforced its deficiency judgment against the Massachusetts property. The First Circuit affirmed the order of the Massachusetts bankruptcy court avoiding the judgment lien on the Massachusetts property as a judicial lien that impaired the debtors Massachusetts homestead exemption. The *Hart* court distinguished the lien of a foreclosure decree from the lien of a deficiency judgment holding that the latter can be a judicial lien for § 522(f) purposes.

In summary, the Rucks are not entitled to avoid the lien of the unenforced foreclosure decree on either of these properties because the lien is not a "judicial lien"

under § 522(f)(1) and Central is entitled to summary judgment on that point.

### Lapsed Foreclosure Judgments

■ Alternatively, the debtors argue that the foreclosure judgment has lapsed under Kan. Stat. Ann. § 58–2314 and Central's purported judgment lien may be avoided on this additional basis.[23] This section pertains to dormancy, revivor, and renewal of unenforced foreclosure judgments. It provides:

Whenever real estate mortgages have been ... foreclosed by judgment of the district court in any county in the state of Kansas, and no renewal affidavit shall have been filed or no execution or orders of sale shall have been issued thereon within five years and no proceedings have been instituted in accordance with the provisions of K.S.A. 60–2404 [revivor of dormant judgment] ... to revive the judgment ... then it shall be the duty of the clerk of the court *on application of any party in interest,* to record in the office of the register of deeds in which the mortgage is recorded, an instrument giving the date of the entry of the judgment of foreclosure ... together with the statement that no renewal affidavit was filed, nor execution or order of sale issued within five years, nor any proceedings to revive the judgment were instituted within seven years from the date of the entry of the judgment. *The recorded instrument shall operate as a*

---

**21.** *In re Burns,* 437 B.R. 246 (Bankr.N.D.Ohio 2010); *In re Hart,* 328 F.3d 45 (1st Cir.2003); *In re Maxwell,* 2010 WL 4736206 (Bankr. E.D.Tenn. Nov.16, 2010); *In re McMorris,* 436 B.R. 359 (Bankr.M.D.La.2010); *In re Biles,* 2011 WL 1600521 (Bankr.N.D.Okla. 2011).

**22.** *In re Hart,* 328 F.3d 45, 49 (1st Cir.2003).

**23.** Under the Rules, a challenge to the Bank's secured status for reasons outside the ambit of § 522(f)(1) should be pursued as an adversary proceeding, *see* Fed. R. Bankr.P. 7001(2) ("a proceeding to determine the validity, priority, or extent of a lien ... other than a proceeding under Rule 4003(d) [pertaining to § 522(f) lien avoidance]" is an adversary proceeding). The Bank has not objected to the debtors' proceeding on this theory by motion.

*cancellation and release of the mortgage.*[24]

Like the general judgment dormancy statute, § 58–2314 contains a tolling provision to prevent a judgment from becoming dormant after five years where "enforcement of the judgment by legal process is stayed or prohibited."[25] The Court need not determine whether the 2001 foreclosure judgment's dormancy clock was tolled by the parties' forbearance agreement that was incorporated into the foreclosure judgment and became a part of the state court's orders. That agreement provided that Central would forbear from enforcement of the foreclosure judgment so long as the debtors made the payments against the judgment as set forth in the journal entry.[26] There is nothing in the summary judgment record before this Court that the "instrument" described in § 58–2314(a) has been recorded with the Marion County Register of Deeds and therefore, the Court cannot conclude as a matter of law that a cancellation and release of the mortgages described in the foreclosure decree has been effectuated. The debtors' request to avoid enforcement of the foreclosure judgment on the basis of § 58–2314(a) must be denied.

### Homestead Exemption Objection

■ We turn now to the controversy surrounding debtors' attempt to exempt both tracts. The debtors are entitled to claim the homestead that they occupied and had established at the date of the petition. According to their petition, the debtors inhabited the 275th Property at that time. The sole uncontroverted fact bearing on this issue is that Central's president inspected the Remington property on October 6, 2010, some time after the July 22 filing date, and found it unoccupied. At the time the Rucks filed this case, there was a pending divorce proceeding in state court. As noted above, the two tracts the debtors seek to exempt are not contiguous, but are probably not more than a mile apart.

Section 522(b) permits the debtors to exempt property that would be exempt at Kansas law from their estate. The Kansas Constitution at Article 15, § 9 provides for

---

24. Section 58–2314(a) (Emphasis added.).

25. *See* KAN. STAT. ANN. §§ 58–2314(b), 60–2403(c).

26. The Court observes that a plain reading of the foreclosure decree suggests that Central was prohibited from enforcing the foreclosure judgment by legal process (*i.e.* conducting a sheriff's sale of the property) so long as debtors made the agreed upon payments: "Plaintiff shall not execute on its judgments herein, *or conduct a Sheriff's Sale of the foreclosed property, so long as it receives a minimum payment ...*" *See* Dkt. 58–8 (Ex. 7, pp. 8–9 of Journal Entry of Judgment attached to Central's Memorandum in Support of Summary Judgment.). *See First Nat. Bank of Norton v. Harper,* 161 Kan. 536, 540–41, 169 P.2d 844 (1946) (To "execute" on the judgment is the act of carrying into effect the final judgment and decree of the court; it is the process of the court or writ issued by the clerk and directed to the sheriff of the county for en-forcement of the judgment.). Debtors' periodic payments standing alone did not toll the dormancy period. *See Dallas v. Dallas,* 236 Kan. 92, 94, 689 P.2d 1184 (1984) (partial payment of judgment does not toll the dormancy statute and prevent the judgment from becoming dormant). *See also St. Joseph Development Corp. v. Sequenzia,* 25 Kan.App.2d 514, 968 P.2d 682 (1998) (bankruptcy automatic stay tolled the running of dormancy period of judgment). It was the parties' enforceable forbearance agreement memorialized in the foreclosure decree that prevented Central from executing. The debtors enjoyed the benefits of the forbearance agreement, continuing to make payments on a mortgage debt they now contend was extinguished by a lapse they allege results from the agreement from which they have benefitted. This is the illogical effect of what debtors urge upon the Court today.

the exemption of "a homestead, occupied as a residence by the family of the owner" from forced sale. KAN. STAT. ANN. § 60–2301 provides that "*a* homestead" occupied by "the owner or by the family of the owner, or by both the owner and family thereof" shall be excepted from forced sale.

This Court has previously held that Kansans who are married but occupy separate residences may not claim separate homesteads at Kansas law.[27] In *In re Sauer*, the debtors were separated, but not divorced. No divorce case was pending. They merely determined they could not live together and occupied separate residences in the towns of Lakin and Kinsley, about 115 miles apart. Applying the plain language of the homestead statute, the Court concluded that there is only one homestead available to the owner or the family of the owner.[28] Mrs. Ruck resided with Mr. Ruck at the 275th Property at the date of filing. The Remington property was empty at some time after the filing. The Court sees no reason to depart from *Sauer* and concludes that, as a matter of law, the Rucks are not entitled to exempt two homesteads.[29]

### Summary

There being no genuine dispute as to any material fact in connection with the nature of the foreclosure judgment the debtors seek to avoid, Central is entitled to judgment as a matter of law that the foreclosure judgment cannot be avoided as a judicial lien utilizing § 522(f)(1). There being nothing in the summary judgment record concerning the filing of a § 58–2314(a) instrument, the Court cannot conclude that the foreclosure judgment has lapsed or that the underlying mortgages have been canceled and released. The debtors' motion to avoid Central's lien on that basis should also be denied. Likewise, in the absence of any factual controversy concerning Central's objection to debtors' claimed exemption of two homesteads, Central is entitled to judgment as a matter of law that the debtors' sole homestead is the 275th Property.

Central National Bank's motion for summary judgment is therefore GRANTED.

---

**27.** *In re Sauer,* 403 B.R. 722 (Bankr.D.Kan. 2009).

**28.** *See Atchison Sav. Bank v. Wheeler's Adm'r,* 20 Kan. 625, 1878 WL 971 (1878).

**29.** As a result of the divorce filing, Mrs. Ruck gained an undivided interest in all of the marital property, KAN. STAT. ANN. § 23–201, but the undivided ownership does not expand her ability to exempt a property that she did not occupy at filing.